**A & F Builders LLC v. David-Lea Co.**

C.P. of Delaware County, no. 08-14962.

*Robert M. Firkser,* for plaintiff.

*Norman C. Henss* and *Jo-Anne S. Frazier,* for defendants.

BURR, S.J., February 24, 2011—The defendants, David-Lea Company, LP and Betty Lea Henderson and David C. Henderson, Co-Partners t/a David-Lea Company, have appealed from this court's order denying their motions for post-trial relief in this ejectment action seeking the return of an area comprising approximately 62 x 33.02' (or 2,047.24 square feet) of neighboring land situated in Darby Township, Pennsylvania on Scott Road near its intersection with Forrester Avenue, which the defendants had appropriated for themselves when constructing a parking lot adjacent to their commercial property in the year 1981. In 2004, the plaintiff became the third consecutive purchaser of the subject parcel subsequent to a sheriff's sale of the property which had occurred in the year 1992, or 11 years after the defendants had sequestered it behind a fence surrounding the said parking lot. The court determined that the defendants had

not met their burden of proving ownership of the parcel by adverse possession, nor pursuant to the doctrine of consentable line and this appeal followed.

A non-jury trial of the above-captioned matter was held on April 30, 2010 during which the parties presented the following joint stipulation of facts, set forth below without the introductory paragraphs naming the parties, and presented no testimony accompanying their legal argument. (4/30/10 N.T. 4; joint stipulation of facts and documents - trial exhibits 1-22)

"3 . . . The parcel of ground in dispute as to ownership by plaintiff and defendants is a fenced, macadamed parking area ('fenced area') not encompassed within the deed to David-Lea, Co. or Wilbur C. Henderson, and described as follows:

'beginning at an interior point being located the following two (2) courses and distances from the intersection of the southwesterly side of Scott Avenue (widened at various widths) with the northwesterly side of Forrester Avenue (forty (40') wide); (1) north 22 degrees, 42 minutes, 10 seconds west along said Scott Avenue 200 feet; (2) then leaving said Scott Avenue South 67 degrees, 17 minutes, 50 seconds west 117 feet to the said point of beginning; thence south 22 degrees, 42 minutes, 10 seconds, east 62 feet to a point; thence south 67 degrees, 17 minutes, 50 seconds, sest 33.02 feet to a point; thence north 22 degrees, 42 minutes, 10 seconds, west 62 feet to a point; thence north 67 degrees, 17 minutes, 50 seconds, east 33.02 feet to the first mentioned point and place of beginning.

Containing 2,047.24 square feet more or less.' (Hereinafter referred to as the "fenced area").

"4. The As-Built Survey of H. Gilroy Damon Associates, Inc. dated November 18, 1993, revised December 3, 1993, prepared for David-Lea Co. shows the location of the fence enclosing the fenced area. [Joint trial exhibit number 1].

"5. In 1981, David-Lea Co., erected a fence separating its parking area from the property of its adjacent neighbor, and surfaced the enclosed parking area with macadam.

"6. David-Lea Co. utilized the Fenced Area as eight parking spaces for the tenants of its Independence court Buildings, and has continued to do so uninterruptedly until the present date.

"7. The fence separating the fenced area from the adjoining landowner has remained standing since its installation in 1981.

"8. No adjoining landowner has brought suit against David-Lea, Co. with regard to the ownership of the ground enclosed in the fence, nor the right of David-Lea, Co. to erect and maintain the fence and occupy the area within the fence, until the plaintiff did in March, 2007.

"9. The adjoining landowners have not occupied nor had access to the Fenced Area since 1981.

"10. The only access to the Fenced Area is through the Independence court parking lots and driveways.

"11. The Fenced Area does not have frontage on any public or private road.

"12. On October 18, 1939, Francis R. Taylor and Elizabeth R. Taylor executed a deed to Forrester H. Scott, which deed includes the Fenced Area. [Joint trial exhibit number 2].

"13. On March 3, 1992, the tax claim bureau of delaware county, as trustee, executed a tax claim bureau deed 'between the tax claim bureau , of the County of Delaware, Pennsylvania, as Trustee, grantor, and William G. Smith, grantee...' 'being the property formerly owned or reputed to be owned by Forrester H. Scott', which deed included the Fenced Area as part of a larger parcel. ['plaintiff's parcel' - joint trial exhibit number 3].

"14. The abovementioned deed from the tax claim bureau of Delaware County was as a result [of] the tax claim bureau conducting a judicial sale for unpaid taxes. The Tax Claim Bureau's file is attached as [joint trial exhibit number 21].

"15. On May 6, 2005, William G. Smith transferred the plaintiff's parcel to Richard Womack. [Joint trial exhibit number 4].

"16. On May 11, 2006, Richard Womack transferred the plaintiff's Parcel to plaintiff A & F Builders, LLC for the stated consideration of Fifty Thousand Dollars ($50,000.00). [Joint trial exhibit number 5].

"17. The deeds set forth in paragraphs 12, 13, 15 and 16 hereof represent plaintiff's chain of title.

"18. Plaintiff thereafter subdivided the plaintiff's Parcel, as shown on the plan entitled: 'reverse subdivision/subdivision plan' dated April 15, 2006 (revised September 25, 2006 and October 19, 2006) ('plaintiff's plan') prepared by H. Gilroy Damon Associates, Inc. for Milrow Development Company, which is the last approved subdivision of plaintiff's parcel. [Joint trial exhibit number 6].

"19. Pursuant to plaintiff's plan, the part of plaintiff's parcel which included the Fenced Area was subdivided into two (2) building lots fronting Scott Avenue and designated as Lots 1 and 2, which lot each included a part of the Fenced Area.

"20. Milrow Development Company is a builder with common ownership with plaintiff. Plaintiff A & F Builders, LLC customarily acquires real property and Milrow Development Company customarily develops the real property.

"21. On or about March 14, 2007, plaintiff demanded that David-Lea, Co. quit and vacate the Fenced Area, and David-Lea Co. has refused to do so.

"22. On August 23, 2007, David-Lea Co., L.P. filed an action to quiet title to the Fenced Area in the matter of *David-Lea Co., L.P. v. A & F Builders, LLC* and Milrow Development Company, Inc. in the court of Common Pleas of Delaware County at Number 07-011100. (Hereinafter: *'David-Lea v. A&F'*). [Complaint - joint trial exhibit number 7].

"23. On September 17, 2007, A&F Builders, LLC filed preliminary objections to the complaint in *David-Lea*

*v. A&F* alleging: (1) failure to comply with [a] rule of court, (2) Failure to state a cause of action and (3) Failure to state a cause of action as to defendant Milrow Development Co., Inc. [Joint trial exhibit number 8].

"24. David-Lea Co. did not respond to or answer the preliminary objections as the parties were discussing settlement as set forth in the correspondence between the parties attached as [Joint trial exhibit number 22].

"25. The matter of the preliminary objections was not briefed by David-Lea Co. or listed for argument.

"26. By order dated November 26, 2007, the preliminary objections of A&F Builders, LLC in *David-Lea Co v. A&F* were sustained, plaintiff's complaint was stricken without prejudice, and plaintiff was granted the right to file an amended complaint within twenty days (20) of the date of the notice, which notice was dated November 30, 2007. [Joint trial exhibit number 9].

"27. On December 19, 2007, David-Lea Co., L.P. filed an amended complaint in *David-Lea Co., Inc. v. A&F.* [Joint trial exhibit number 10].

"28. A&F did not respond or otherwise plead to the David-Lea Co. amended complaint as settlement negotiations were ongoing. [Joint Trial Exhibit Number 11].

"29. The parties agreed that *David-Lea Co. v. A&F* would be discontinued without prejudice and entered an order to discontinue without prejudice. [Joint trial exhibit number 12].

"30. On or about October 19, 2007, plaintiff executed

a deed, to one Amber C. Benjamin, for Lot #2 on plaintiff's plan, with a UPI [Uniform Parcel Identifier] Number of 15-00-03215-02, which deed did not contain the Fenced Area. [Joint trial exhibit number 13].

"31. On or about December 27, 2007, plaintiff executed a deed to one Sonja A. Arnold, for Lot #1 on plaintiff's plan, with a UPI Number of 15-00-03215-01, which deed did contain a portion of the Fenced Area. [Joint trial exhibit number 14].

"32. On or about November 6, 2008, plaintiff filed this action in ejectment and specific performance, but plaintiff has withdrawn its specific performance claim without prejudice.

"33. Plaintiff thereafter discovered that the legal description of the property transferred to Sonja A. Arnold included the Fenced Area.

"34. On or about April 16, 2009, a 'deed of correction to correct legal description' was executed, amending the legal description of the property transferred to Sonja A. Arnold [i.e. Lot #1], which legal description excluded the Fenced Area. [Joint trial exhibit number 15].

"35. On or about December 28, 2009, A&F Builders, LLC executed a deed to A&F Builders, LLC purporting to be [for] the Fenced Area as 'part of UPI # 15-00-03215-01'. [Joint trial exhibit number 16].

"36. There has been no formal approval by the Township or the County of the subdivision of the Fenced Area from the parcels transferred to Amber C. Benjamin and Sonja A. Arnold.

"37. The Fenced Area has not been assigned a separate

tax folio number. [Joint trial exhibit number 17].

"38. Plaintiff does not own any property adjoining or adjacent to the Fenced Area." (Parties' joint stipulation of facts).[1]

When oral argument commenced at the trial, plaintiff presented, as joint trial exhibit number 6, a [Milrow (not "Mill Road" as printed in the transcript)] development subdivision plan featuring Lots 1 and 2 that are the subject of this litigation. (N.T. 4-5, 8)[2] Plaintiff's counsel explained

1. Joint Trial Exhibits submitted to the court that were not referenced in the parties' Joint Stipulation of Facts are: Number 18 - Darby Township, Delaware County, Pennsylvania Ordinance, including the Subdivision and introductory and residential district portions of the Zoning Ordinances enacted December 1, 2007, and Effective July 21, 1965; Number 19 - Delaware County Subdivision Ordinance with web address of http://www.co.delaware.pa.us/planning/planordreview/Delaware%20 County%20SLDO.pdf.; and Number 20 - Deed for property adjoining the plaintiff's sold by Vincent J. Papale to the defendants, Betty Lea Henderson and David C. Henderson, Co-Partners Trading as David-Lea Co. dated October 31, 1977.

2. The entire fenced area possessed a UPI (Uniform Parcel Identifier) of 15-00-03215-01 pursuant to a Deed on file with the Delaware County, PA Recorder of Deeds in Book 3800, Page 970 when it was conveyed from Richard Womack to the plaintiff on May 11, 2006. (Abstract Appended as Exhibit C to the plaintiff's Complaint; Deed -Joint Trial Exhibit Number 5). The UPI number of the defendants' adjoining property, exclusive of the fenced area, is 15-00-03215-00 pursuant to the Papale Deed recorded with the Delaware County, PA Recorder of Deeds, (plaintiff's Complaint, Paragraph 5 and Exhibit B appended thereto). It is here noted that the defendants responded to Paragraph 4 of the plaintiff's Complaint which stated that the UPI Number of the entire parcel is 15-00-03215-01, with contradictory averments in Paragraphs 4 and 7 of their Answer thereto that the UPI Number thereof is 15-00-0315-02. (Paragraph 4, plaintiff's Complaint and Paragraphs 4 and 7 of defendants' Answer to the plaintiff's Complaint). However, according to the parties' Joint Stipulation of Facts, Lot #1 has the Folio #15-00-03215-01 (pursuant to the Deed transferred by the plaintiff to Sonja A. Arnold which included a portion of the fenced area) and Lot #2 has the Folio # 15-00-03215-02 (pursuant to the Deed transferred by the plaintiff to Amber C. Benjamin which did not include a portion of the fenced area). (Joint Stipulation of Facts Numbers 30 and 31; Joint Trial Exhibits 13 (Benjamin Deed to Lot #2) and 14 (Arnold Deed to Lot #1)). The plaintiff's later filed "Deed of Correction to Correct Legal Description"

that "[Milrow] Development" is a company related to the plaintiff and that all of the property that included lots 1 and 2 had been purchased by the plaintiff in [2006] pursuant to a deed that described metes and bounds thereof as including the land situated within the defendants' fenced parking lot area. (N.T. 13). Counsel related that Lots 1 and 2 ultimately came to comprise areas exclusive of footage included within the fenced area because it was the plaintiff's intention to resolve ownership of that parcel in itself. (N.T. 12-14). Plaintiff's counsel explained that, subsequent to the plaintiff's demand that the defendants remove the fence and parking lot, the defendants, in 2007, filed an action to quiet title in the parcel, but had withdrawn that suit on grounds that a settlement was imminent, after which the plaintiff brought the within ejectment action seeking possession of the "fenced area" comprising the parking lot constructed in 1981 by the defendants. (N.T. 14-18, 30-33)

Counsel for the defendants responded that, because the County had never acquired title to the disputed property at the time of the 1992 tax sale, the defendants had retained "inchoate" rights to the parcel that were established when it appropriated it for themselves in 1981 and that these rights could not be passed on to the plaintiff. (N.T. 44-48) Citing to the case authority of *Torch v. Constantino*, 323 A.2d 278 (Pa. Super. 1974), defendants' counsel maintained that adverse possession could not lie against

excluding the applicable portion of the Fenced Area from Lot #1 and transferring a Deed for that section back to itself with the UPI Number of 15-00-03215-01, which was not only the UPI for Lot #1, but also of the entire parcel purchased by the plaintiff from Richard Womack on May 11, 2006. (Parties' Joint Stipulation of Facts, Paragraph 34; Joint Trial Exhibit Number 15)

a governmental body where, as here, the government had not assumed title ownership so as to keep the property from remaining "fallow land" on which taxes could not be collected and had functioned merely as a lien holder instead. (N.T. 45-46) Defendants' counsel further asserted that "[t]he County, by its lien, could only get what its predecessor entitlement was and that is the property with the inchoate rights of David Lea to have his fence there," and that the tolling of the 21 years for adverse possession and consentable line could not occur due to the County's failure to obtain sufficient indicia of ownership of the disputed land. (N.T. 46-47)

Counsel for defendants then proffered the following less than crisp explanation of their defense theory of consentable line:

Now, consentable line, we are saying is not - that there is a dispute in compromise. We're saying here it's recognition and acquiescence. And you have to have a finding that each party claimed the land on their side as their own. Not necessarily used it or fought over it or anything else and that the occupation continued for 21 years. Now, the adverse possession cases and consentable line cases, all seem to state that a fence, standing alone, so to speak, is ample possession of the hostile, open, notorious and everything else, for that period. That's a long standing principle of law. It goes back to 1930 in the Lagowski [ph] case. That you put up a fence and the world knows. That makes it open, hostile, notorious, everything you need for adverse possession. Same with consentable line. A fence is a bigger demarcation than say your hedgerow. Same principle with the hedgerow, but there's nothing in

these cases that say [sic] there has to be a war about this or anything else. Simply that for a period of 21 years, nobody disturbs it. Nobody came in and tore it down. Nobody tried to do anything with it. Nobody - you know, nobody brought suit. So, for a 21 year period, that fence stayed there. Over 21 years, actually. And it wasn't upset. . .by the tax claim, so it has been mere. It has been very visible, It's part of that whole area that was developed. It's part of the parking lot. It's very, very - it's very set off. It's very clear. There's no mistaking it. You can't miss that elephant, okay. (N.T. 49-51)

The defense went on to accuse the plaintiff of committing the alleged misdemeanor of disobeying a township land use ordinance by subdividing and transferring lots 1 and 2 with metes and bounds descriptions that extended only to the defendants' fence line, and contending that only the buyers of those subdivided properties possessed the standing to eject the defendants from possession of the fenced area. (N.T. 51-52) Counsel for the defendants then summarized the plaintiff's claim for ejectment, clarifying that the buyer of Lot 1 was first sold the segment of the fenced area that was included in the plaintiff's deed for the entire property, that the plaintiff had reconveyed that portion of lot 1 to itself, and that no part of the Fenced Area had ever been transferred to the purchaser of Lot 2. (N.T.52-3) Defense counsel stated that the subject real estate transfers had been made in violation of the Delaware County MPC (Municipal Planning Code) adopted by Darby Township that necessitated governmental permission any time one such parcel is subdivided into two. (N.T. 53-4) Counsel for the defendants then asserted

her belief that the motive of the plaintiff in bringing this action to clarify its rights to the fenced area should also be deemed criminal in nature:

> So because he doesn't have frontage or anything else, it's not a subdividable parcel and there's no — he has retained no rights anywhere on this plan that you can see. There's no easement to get to it, so he can't — he can't access the parcel. So we submit to the court that the only reason he's retained those parcels is to bring this action. He actually subdivided the whole thing. Sold it to everybody. He's made his money out. He's done with this development. He's sold all these and retained this just for the purpose of just bringing this suit. Just to obtain compensation. I can't think of any other reason. He can't use — he can't build the lot. He's admitted he can't build the lot. He has no access to the lot. So if we say that he owns this, then, he owns this parcel in the middle of nowhere that he can't build or own or develop. And also, it doesn't have its own UPI number, so he doesn't get taxed on it. The UPI numbers follow the zoning. When after you get your subdivision, you go and get your UPI, your uniform parcel identifier assigned. There's no separate UPI for this because there's no subdivision. Therefore, the owner of these two lots are paying taxes on that. And one of the criteria for possession is do you pay the taxes? (N.T. 56-57)

Hence, in the manner of the son who kills his parents and then throws himself on the mercy of the court claiming to be an orphan, the defendants are accusing the plaintiff that, upon being informed that the defendants were claiming ownership of the fenced area, a portion of

which was sold as part of Lot 1, it criminally rescinded that conveyance and transferred the affected section of the fenced area back to itself without governmental approval. The defendants additionally accused the plaintiff of similarly harboring a criminal mens rea when conveying Lot 2 sans its portion of the fenced area to the purchaser at a time when the plaintiff reasonably could have anticipated that a court of competent jurisdiction might ultimately determine that the defendants owned it and that it could not be sold at all. However, the defendants could more rationally have anticipated that the plaintiff might bring suit to seek enforcement of rights set forth in the deed to the entire developed property adducing a metes and bounds description that included the fenced area, and to clear up whatever issues prevented the plaintiff from passing clear title to the entirety of Lots 1 and 2 to the buyers.

Nevertheless, the defendants refusal to accept that they might not be deemed entitled to possession of the fenced area has led them to urge a finding by this court that the plaintiff's motive in seeking legal clarification of its rights to this parcel is criminally extortionist. Indeed, the defendants' logic moves from the ridiculous to the sublime in the urging of an additional conclusion by the court that, because there is no access to the Fenced Area except through the defendants' property, and because the parcel does not meet governmentally imposed lot size requirements, the instant action raises a claim to land for which there is no conceivable use whatsoever and is, in fact, worthless. In thus putting their proverbial cart before the horse, defendants have exposed themselves as being loath to admit that the fenced area, indeed, would be usable and salable to the buyers of Lots 1 and 2 if it is determined

by the court to belong to the plaintiff.

Defendants' counsel went on to explain, without a proffer of supporting evidence or a glimmer of truth that, in the defendants' view, because the owners of Lots 1 and 2 are paying taxes on the fenced area because of filing deeds with their respective UPI's on them, they should be the ones seeking the defendants' ejectment therefrom. (N.T. 57-59) Defense counsel again averred that the plaintiff retained the fenced area for itself in order to extort money in a settlement with the defendants because plaintiff had no use for a parcel of land that it could not "get to" by access road because their fence obstructed ingress and egress. (N.T. 60-61) Moreover, the defense contended in support of its theory of consentable line that it was the non-party owners of Lots 1 and 2 who had acquiesced in the purchase of their parcels only up to the approximately eight-foot tall chain length fence line and thus, "consented" to its presence as the boundaries to their property. (N.T. 61) Counsel for the defendants asserted that sometimes new property lines can be established by "an error" about which abutting property owners don't complain, and the individual or entity responsible for the error gets "lucky" in obtaining the additional property without cost. (N.T.63)

Plaintiff's counsel responded with argument that, contrary to the defendants' representations, the *Torch* case, indeed, does stand for the proposition that land held for tax sale tolls the requisite prescription period for establishing adverse possession. (N.T. 64) see *Torch v. Constantino*, supra. Counsel then pointed out the logical inconsistency between the defendants' assertion that they held the disputed parcel under the doctrine of consentable line, which requires establishment by the consent of abutting

property owners, and the theory of adverse possession, which necessitates open, hostile and notorious use of the neighbor's parcel for 21 years without a dispute ever being raised over the correct location of the adjoining property line (N.T. 66) Plaintiff's counsel also argued that the payment of taxes on a property is not an indicia of its ownership and that the defendants have never paid taxes on the fenced area since taking it for themselves in 1981. (N.T. 66-67) Counsel noted as "not kosher" the fallacy inherent in the defense contention of ownership of the property despite never having paid taxes on it in comparison with their claim that the plaintiff purchaser could not own the fenced area because it had not paid taxes on it either. (N.T. 67-68) Plaintiff's counsel concluded his argument by remarking that, even if the defendants' argument on the subdivision issue were accepted and the sales of Lots 1 and 2, with metes and bounds descriptions that did not include the fenced area, were voided, the plaintiff would still own and lay claim to the disputed parcel. (N.T. 68-69)

Following the trial, the defendants submitted a trial memorandum in which these issues alone were presented and argued for review:

1. Should the court grant ejectment of the party who has, for over twenty-five (25) years, openly occupied the Fenced Area, after the plaintiff has conveyed the UPI parcel which contained the Fenced Area, while illegally retaining title to the Fenced area without subdivision approval, and which Fenced Area does not conform to the definition of "Lot" under the Darby Township Zoning Ordinance or have a right of access? (Suggested Answer: No).

2. Did David-Lea, Co. acquire title to the Fenced Area by the Doctrine of Consentable Line and/or Adverse Possession? (Suggested Answer: Yes).

3. Did the 1992 real estate tax sale of plaintiff's property by the Tax Claim Bureau give the County title to the property so that the twenty-one (21) year occupancy of the Fenced Area by David-Lea Co. was interrupted so as to prevent operation of the Doctrine of Consentable Line and/or Adverse Possession? (Suggested Answer: No). (Defendants' trial memorandum of law, p.5).

The court, having arrived at answers to the foregoing questions adversely to those suggested by the defendants, entered the following:

"JUDGMENT IN POSSESSION

"And now, this 7th day of July, 2010, following a Non-Jury Trial held on April 30, 2010, in the above-captioned case, and after a thorough review and careful consideration of all pre-trial and trial memoranda, trial testimony, exhibits and the parties' jointly submitted Stipulation of Facts, as well as the legal arguments presented by able counsel for both parties, judgment in possession will be, and hereby is, entered in favor of the plaintiff, A & F Builders, LLP, and against the defendants, David-Lea Company, LP and Betty Lea Henderson and David C. Henderson, Co-Partners t/a David-Lea Company.

"In accordance with the foregoing judgment, it is ordered and decreed that the plaintiff, A & F Builders, LLC, shall have immediate possession of the certain strip of ground situate in the Township of Darby, County of Delaware, Commonwealth of Pennsylvania, UPI Number

15-00-03215-01, being bounded and described as follows in Paragraph 3 of the parties' Joint Stipulation of Facts:

'beginning at an interior point being located the following two (2) courses and distances from the intersection of the southwesterly side of Scott Avenue (widened at various widths) with the northwesterly side of Forrester Avenue (forty (40') wide); (1) North 22 degrees, 42 minutes, 10 seconds West along said Scott Avenue 200 feet; (2) then leaving said Scott Avenue South 67 degrees, 17 minutes, 50 seconds West 117 feet to the said point of beginning; thence South 22 degrees, 42 minutes, 10 seconds, East 62 feet to a point; thence South 67 degrees, 17 minutes, 50 seconds, West 33.02 feet to a point; thence North 22 degrees, 42 minutes, 10 seconds, West 62 feet to a point; thence North 67 degrees, 17 minutes, 50 seconds, East 33.02 feet to the first mentioned point and place of beginning. Containing 2,047.24 square feet more or less.' (Hereinafter referred to [in the parties' joint Stipulation of Facts] as the "Fenced Area').' (Parties' Joint Stipulation of Facts, Paragraph 3).'

"It is further ordered and decreed that the defendants are forever barred from asserting any right, title, lien or interest in the property described herein that was or is inconsistent with plaintiff's rights and right thereto, and that, in keeping with this judgment in possession, within sixty (60) days of the date hereof:

"1. The defendants shall henceforth proceed to the Office of Judicial Support and/or the recorder of deeds of Delaware County, Pennsylvania and record, cancel, surrender and/or satisfy of record, any plan,

document, obligation, deed or other instrument whether determined to be valid, invalid, satisfied or discharged, and to execute and deliver a deed necessary to make this judgment effective regarding plaintiff's right, title and interest in said property and in all instances regarding plaintiff's rights and right thereto; and

"2. The defendants shall remove the fence they have constructed surrounding the said property and return that property to its condition prior to the construction of the fence hereby ordered to be removed; and

"3. The defendants shall remove the parking area constructed on the said property, thereby returning that property to its condition prior to the construction of the parking area hereby ordered to be removed.

"It is further ordered and decreed that judgment will be, and hereby is, entered in favor of the plaintiff, A & F Builders, LLC, and against the defendants, David-Lea Company and Betty Lea Henderson and David C. Henderson, Co-Partners t/a David Lea Company on the defendants' Counterclaim alleging Adverse Possession[3].

---

3. [Actually, footnote 1 of the Judgment] In the parties' cited case authority of *Torch v. Constantino*, 227 Pa. Super. 427, 323 A.2d 278 (1974), the Pennsylvania Superior Court noted that the holding of title by adverse possession to property held by a county for nonpayment of taxes would be an impediment deterring prospective purchasers of that property in support of its ruling that 'adverse possession does not run against the political subdivisions holding land for tax sales for nonpayment of taxes, as *trustee*....' *Torch v. Constantino*, supra, 323 A.2d at 281. (Emphasis added).

The Tax Claim Bureau's Deed to this property, dated March 3, 1992, and submitted as Exhibit 3 by the parties in tandem with their joint Stipulation of Facts, recites that the Deed to the subject property was between 'the TAX CLAIM BUREAU, of the County of Delaware, Pennsylvania, as Trustee, GRANTOR and William G. Smith...Grantee, his, her, or their heirs, assigns and successors.' (Exhibit 3 to Parties' Joint Stipulation of Facts)(Emphasis added).

"It is further ordered and decreed that defendants' Counterclaim alleging a claim of Consentable Line will be, and hereby is, dismissed with prejudice.

"It is further ordered and decreed that defendants' petition to amend its answer to add as a counterclaim issues raised in new matter will be, and hereby is, dismissed as moot."

(Judgment entered by this court in *A & F Builders, LLC v. David-Lea Company, L.P.,* et alia, No. 08-14962, on July 7, 2010 in the court of Common Pleas, Delaware County, Pennsylvania).[4]

The defendants' timely filed a motion for post-trial relief alleged seven contentions of error reiterating not only the several issues previously raised, but also new allegations disputing the correctness of the wording of the judgment of possession that had been entered. Notwithstanding their listing of additional matters along with those raised heretofore, the defendants presented legal argument regarding only two of these in their contemporaneously filed memorandum of law in support of their motion for post-trial relief: (1) that the court purportedly failed to address the doctrine of consentable line as a distinct legal

---

There is, hence, no requirement for a county to hold title to a property subject to a tax sale in order for a claim of adverse possession not to run against it, as asserted by the defendants in this case. It is only necessary for the county or political subdivision to hold such a parcel as trustee. *Torch v. Constantino.* supra. Accord: *Fred E. Young, Inc. v. Brush Mountain Sportsmen's Association,* 697 A.2d 984 (Pa. Super. 1997)(Adverse possession does not lie against a Pennsylvania county in connection with a tax sale).

4. The defendants' motion for supersedeas and stay of judgment in possession pending appeal was granted by an order of this court dated January 31, 2011, conditioned upon the posting of appropriate security in the amount of $5,000.00. A security bond in that amount was posted with the court by the defendants on February 9, 2011.

concept from adverse possession; and (2) that the court wrongfully found that the tax claim bureau, as trustee for execution of the tax sale deed, was the beneficial owner of the property. (Defendants' memorandum of law in support of their motion for post trial relief filed on July 19, 2010, pp. 3, 4-5) On September 15, 2010 the defendants submitted an additional memorandum of law in support of their motion for post-trial relief in which they posited argument regarding the following five issues:

1. Did David-Lea Co. establish its right to possession of the Fenced Area by the Doctrine of Consentable Line and/or adverse possession? (suggested answer: Yes).

2. Should the ruling in *Torch v. Constantino* be exceeded [sic] to apply to tax sales where the deed is executed by the tax claim bureau as Trustee when the County is not in title to the property? (Suggested answer: No).

3. Is not the holding of *Torch v. Constantino* inapplicable where the purchaser at the tax sale had notice of a third party's claim of ownership by the Doctrine of Consentable Line? (Suggested answer: Yes).

4. Where plaintiff violated the Delaware County subdivision ordinance by excluding the fenced area from its conveyance, without obtaining formal subdivision approval severing the fenced area, should the court assist the plaintiff in the commission of these illegal acts by ordering that plaintiff has a right to possession of the Fenced Area? (Suggested answer: No).

5. If the court does not grant David-Lea Co.'s request for reversal should not the Judgment be amended to correct the following errors?

(A) The legal description of the Fenced Area is not UPI Number 15-00-03215-01; therefore, there is an ambiguity as to the parcel to be transferred;

(B) In an action in ejectment, plaintiff is only entitled to a decree for possession, not conveyance of legal title;

(C) The requirement that David-Lea Co. restore the Fenced Area to its previous condition was an abuse of judicial discretion. (Suggested Answer[s]: Yes). Defendants' [second] memorandum of law in support of motion for post-trial relief filed on September 15, 2010, p. 2).

It is here noted that, in the "statement of facts" set forth in this additional memorandum of law in support of their motion for post-trial relief, the defendants made the cryptic statement that, at some unexpressed time subsequent to their erecting the fence around the disputed area, "it was later discovered that a 62 feet by 33.02 feet (2047.24 square feet) portion of the parking lot ('Fenced Area') was not encompassed within the deed to David-Lea Co. (S.F. [Stipulation of Facts] #3)." (Defendants' memorandum of law in support of motion for post-trial relief filed on September 15, 2010, p. 4) The defendants thus admitted that they eventually acquired knowledge that they had taken the fenced area contrary to the right of its true owner and did nothing to rectify it or to compensate the rightful owner or owners for the loss of their property. Moreover, the defendants have yet to explicate how, from whom and when that information had been acquired, and have disingenously maintained that they have retained this parcel due to the failure of its owners to make inquiries of the defendants, until the plaintiff did so on March 14,

2007, and to bring an action such as this to determine the true ownership thereof. Most tellingly, the defendants have presented neither evidence, nor testimony, attesting to why they have never taken such action themselves.

The defendants reasserted in this additional memorandum of law in support of their motion for post-trial relief that the court erred in applying *Torch v. Constantino*, supra, to the facts of this case because of its purported holding that adverse possession could not run against a political subdivision unless it "holds title to the land for a public purpose" and that "the collection of taxes for the various municipal subdivisions constitutes a public purpose." (*Id.*, p. 6) However, it is not the collecting of taxes that is contemplated by the applicable statute as being the "public purpose" that the legislature had in mind, but the taking of title to land by the government for the purpose of permitting the *land's* use by the public instead of allowing it to lie fallow and unused. *Torch v. Constantino*, supra, 323 A.2d at 279. (Emphasis added) The defendants' selective reading of the *Torch* opinion that it is necessary for a political subdivision to take title and ownership of a property subject to a tax sale in order to interrupt the necessary 21 years for establishment of a right of adverse possession has never been adopted. According to the defendants, the court erred in "giving undue significance to the execution of plaintiff's deed by the tax claim bureau as a trustee, since the legislature merely granted the power to execute the deed, which is not the same as the political subdivision holding title to the land and executing the deed for other taxing bodies." (*Id.*, p. 7) The defendants insist that, in order for the holding in *Torch* to apply, the tax claim bureau was required to

hold actual legal title to the fenced area because its only statutory authority was to execute a deed and not to confer legal title to the land, citing to 72 P.S. 5860.608 ("After the court has confirmed the sale and the purchaser has paid the amount of his bid, it shall be the duty of the bureau to make to the said purchaser, his or her heirs or assigns a deed in fee simple for the property sold. Each shall be in the name of the bureau as trustee grantor and shall be executed and duly acknowledged by the Prothonotary....") (*Id.*, p. 11)

The defendants also attempted to establish that ownership of a property is not within the purview of the tax claim bureau based on the policy allowing for owners whose properties are subject to delinquent tax sales to reclaim their property by paying the arrears and, further, on grounds of the legislature's disinclination to impose upon governmental bodies the responsibility for maintenance and injuries and environmental damage to such properties as well. (*Id.*) The defendants thereby claimed that the statement made in footnote 1 of the court's judgment was erroneous because, since the county did not take title to the instant property, reliance on the execution of the deed by the tax claim bureau as mere "trustee" was inappropriate, "since the operative fact is title to the real estate, and not the name by which the municipality executes the deed." (*Id.*, 11-12)

The defendants continue to believe and aver that, since the *Torch* case was not concerned with the doctrine of consentable line, it was inappropriate to deny them possession of the fenced area because the tax sale purchaser had notice of a third party claim to the parcel. (*Id.*, p. 12) The defendants present a tortured theory that, because a tax

sale purchaser could see the fence surrounding the fenced area, he was aware of this particular "defect" on the face of the property. (*Id.*) The defendants liken the facts of this case to those in the case of *Frey v. Beaver County Tax Claim Bureau*, 687 A.2d 57 (Pa. Cmwlth. 1996), where a tax sale was not overturned for a purchaser who claimed a lack of awareness of a defective on-site sewage treatment facility on a property on grounds that, as to the physical conditions on a property, the nostrum of caveat emptor applies to all public sales made by the bureau. (*Id.*) The defendants thus excuse the statutory requirement that a tax sale discharges all prior tax claims, liens, mortgages and other claims on a property based on the 1992 tax purchaser's failure to object to the "defect" of the parking lot and its fence on this land for the next 21 years. (*Id.*, pp. 12-13) Unfortunately for the defendants, the original tax purchaser and now the plaintiff successor in title, would have until the year 2013 to raise such a claim as well as to challenge the boundary created by the defendants' fence pursuant to the doctrine of consentable line.

The defense continued to argue that the plaintiff's sequestration of title to the fenced area for itself without governmental approval pending the outcome of this litigation was in violation of the Darby Township Subdivision Ordinance and the Commonwealth's Municipal Planning Code, section 10107 of which defines "subdivision" as being "the division or redivision of a lot, tract or parcel of land by any means into two or more lots, tracts, parcels or other divisions of land including changes in existing lot lines for the purpose, whether immediate or future, of lease...transfer of ownership...." [with citation to: 53 P.S. §10107; *Holden v. Kay*, 601 A.2d 454, 454 (Pa.

Commw. 1991)(no subdivision without prior approval; and Darby Township, Pa. Subdivision Ordinance 902, §105.2.2 (same).] (*Id.*, pp. 13-14) Citing to Section 108 of the Delaware County Municipal Planning Ordinance deeming such action to constitute a misdemeanor, and the ancient case authorities of *Mitchell v. Smith*, 1 Binney 110, 121, (1804) and *Hazle Drug Co., Inc. v. Wilbur*, 284 Pa. 361, 361 A2d.286, 288 (1925), the defendants averred that this court should not aid someone performing an illegal act. (*Id.*, p. 16) The defendants maintain that, because the plaintiff could not obtain township approval for subdividing the fenced area from the original parcel because the size of it was insufficient for a building project, and there was no roadway access to it, the plaintiff retained title to the fenced area "only to assert an inequitable claim for compensation" against the defendants." (*Id.*, p. 16).

Defendants concluded their additional memorandum in support of their motion for post-trial relief with contentions that, if the court did not grant the foregoing prayers for relief, then it should correct its Judgment to correct the UPI Number of 15-00-03215-01 for the fenced area because it has not been formally subdivided, nor assigned a separate UPI Number from the original for the entire property and this UPI Number was the one assigned to Lot 1 when conveyed by the plaintiff to the buyer, Sonja A. Arnold. (*Id.*, pp. 16-17)

The defendants additionally contended as an alternative to reversal that the court's requirement that the defendants restore the fenced area to its previous was an abuse of discretion because it granted the plaintiff greater relief than that to which it was equitably entitled inasmuch as

the defendants have retained and improved this parcel without objection from any of the abutting property owners and because the plaintiff had no right to expect a grant of anything besides possession when initiating this action. (*Id.*, pp. 17-18)

The defendants' motion for post-trial relief was denied and this timely appeal followed. The defendants have submitted the following concise statement of matters complained of on appeal:

1. The [trial] court erred in dismissing David-Lea Co., L.P.['s] claim for adverse possession based on the court's erroneous construction of the *Torch v. Constantino,* [supra] and *Fred E. Young, Inc. v. Brush Mountain Sportsmen's Association,* 697 A.2d 984 (Pa. Super. 1997)(collectively "Torch") Cases.

A. Where the County did not exercise its option under the Real Estate Tax Sale Law, 72 P.S. §5860.612-1, to acquire legal title to and ownership of the property after tax sale, the Torch case should not apply since adverse possession only runs against the property owner.

B. The court's construction of the language in the *Torch* case is improper since such construction implies that the court has engaged in judicial legislation when the Real Estate Tax Sale Law statute establishes the effect of Tax Sales on claims against the property. (72 P.S. §5860.608, §5860.612-1, §5860.613, §5860.618, and §5860.626).

2. The court erred in dismissing David-Lea Co., L.P.'s claim for title by virtue of the Doctrine of Consentable Line...as follows:

A. The holding of *Torch* does not apply in a case where a fence demarks a Consentable Line, because it is visible to anyone coming onto the property, so prospective purchasers are on notice of the claimed property line; therefore the line is not removed by a Tax Sale pursuant to the statute.

B. Purchasers at a public tax sale receive the property subject to whatever the purchaser will find by physical inspection of the property unless excepted by the Real Estate Tax Law statute. (See *Frey v. Beaver County Tax Claim Bureau*, 687 A.2d 57 (Pa. Cmwlth. 1996)).

3. The court erred in finding that plaintiff had retained title, or the right to title, to the Fenced Area even though plaintiff did not comply with the subdivision ordinance of Delaware County and the Fenced Area does not comply with the requirements of the zoning ordinance to be recognized as a separate "lot".

4. The court erred in granting plaintiff's claim to eject David-Lea Co., L.P. because plaintiff violated the criminal laws of Delaware County in attempting to retain the Fenced Area in violation of the Delaware County subdivision ordinance.

5. The judgment ordered and decreed that: "...the plaintiff, A & F Builders, LLC shall have immediate possession of the certain strip of ground situate in the Township of Darby, County of Delaware, Commonwealth of Pennsylvania, UPI Number 15-00-03215-01...", which Judgment cannot be complied with by David-Lea Co., L.P. because UPI Number 15-00-03215-01 was assigned to the property which plaintiff

transferred to Sonja A. Arnold.

6. Paragraph 1 of the Judgment is in error because:

A. David Lea Co., L.P. has never had title to the Fenced Area or filed of record any plan, document, obligation or deed [or] other instrument with regard thereto.

B. If David-Lea Co., L.P. executes such a deed for the Fenced Area, it would create an illegal subdivision, and the court may not order David-Lea Co., L.P. to execute an illegal act.

7. The Judgment (in paragraphs 2 and 3) requires that the fence surrounding the Fenced Area and the parking lot constructed on [sic] the Fenced Area be removed and the property restored to its condition prior to the construction of the fence and parking lot is in error because:

A. Removal and restoration will not benefit the plaintiff because plaintiff cannot develop the Fenced Area as it has not retained an access easement to the Fenced Area, and the Fenced Area does not conform to the Zoning Ordinance of Darby Township and cannot be developed.

B. It is an abuse of judicial discretion since such fence and parking area existed on the property for over twenty-one (21) years when plaintiff purchased legal title to the property containing the Fenced Area. (Defendants' concise statement of matters complained of on appeal, pp. 1-4).[5]

---

5. The defendants have appended a remark at the end of their concise statement asserting that they seek to retain a supposed right to "file a

The defendants' issues are discussed under the appropriate headings below.

*1. The Defendants Failed to Meet Their Burden of Establishing Claims or Defenses of Adverse Possession and Consentable Line*

The defendants contended that the trial court erred in dismissing David-Lea Co., L.P.'s claim for adverse possession based upon a putatively erroneous construction of the holdings in the case authorities of *Torch v. Constantino*, supra, and *Fred E. Young, Inc. v. Brush Mountain Sportsmen's Association*, 697 A.2d 984 (Pa. Super. 1997)(collectively the *"Torch"* cases) where: (A) the County did not exercise its option under the Real Estate Tax Sale Law, 72 P.S. §5860.612-1, to acquire legal title to and ownership of the property after tax sale and, in the defendants' opinion, adverse possession only runs against the property owner; and (B) the court's construction of the language in the *Torch* case adduces an improper engagement in judicial legislation when the Real Estate Tax Sale Law statute establishes the effect of tax sales on claims against the property. (Concise statement, Paragraph 1) Because the defendants had never before raised any contention of improper "legislative activity" on the part of this court in construing the language of the *Torch* opinion against them, this allegation is deemed waived. Pennsylvania Rule of Civil Procedure 227.1(b) (1); Pennsylvania Rule of Appellate Procedure 302(a) (issues not raised before the lower court cannot be raised

---

supplemental statement to clarify their position in response to the court's more specific Rule 1925(a) Opinion." (*Id.*, p.5). For jurisdictional reasons, it is suggested that the defendants take this issue up with the Pennsylvania Superior Court.

for the first time on appeal); *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974).

Footnote 1 of the judgment in possession from which the defendants have raised this appeal states that:

> In the parties' cited case authority of *Torch v. Constantino*, [supra], the Pennsylvania Superior Court noted that the holding of title by adverse possession to property held by a county for nonpayment of taxes would be an impediment deterring prospective purchasers of that property in support of its ruling that "adverse possession does not run against the political subdivisions holding land for tax sales for nonpayment of taxes, as *trustee....*" *Torch v. Constantino*, supra, 323 A.2d at 281. (Emphasis added).

> The Tax Claim Bureau's Deed to this property, dated March 3, 1992, and submitted as Exhibit 3 by the parties in tandem with their joint Stipulation of Facts, recites that the deed to the subject property was between "the tax claim bureau, of the County of Delaware, Pennsylvania, as Trustee, GRANTOR and William G. Smith...Grantee, his, her, or their heirs, assigns and successors." (Exhibit 3 to parties' joint stipulation of facts) (Emphasis added).

> There is, hence, no requirement for a county to hold title to a property subject to a tax sale in order for a claim of adverse possession not to run against it, as asserted by the defendants in this case. It is only necessary for the county or political subdivision to hold such a parcel as trustee. *Torch v. Constantino*, supra. Accord: *Fred E. Young, Inc. v. Brush Mountain Sportsmen's*

*Association,* 697 A.2d 984 (Pa. Super. 1997)(Adverse possession does not lie against a Pennsylvania county in connection with a tax sale).

The record clearly evinces a yeoman's effort on the part of defense counsel to distinguish the facts and circumstances of the *Torch v. Constantino* case from those of the *instant* case. However, it was the defendants' burden to establish grounds for a legal holding contrary to that explicitly stated in *Torch* that "adverse possession does not run against the political subdivisions holding land for tax sales for nonpayment of taxes, as trustee, and... that this function is a governmental one" instead. *Torch v. Constantino,* supra, 323 A.2d at 281.

The County of Delaware, Pennsylvania, held the land which is the subject of this law suit for judicial sale based upon the non-payment of taxes by its owner and, as trustee, conveyed it to plaintiff's predecessor in title by a deed dated March 3, 1992. Consequently, the prescription period for the defendants' claim of adverse possession stopped running 11 years after the fenced area was created, and only 15 years prior to the inception of this litigation in 2007. Therefore, the defendants were precluded from establishing by a fair preponderance of the evidence an uninterrupted 21-year period of actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the fenced area. *Torch v. Constantino,* supra; *Fred E. Young, Inc. v. Brush Mountain Sportsmen's Association,* supra; *Flannery v. Stump,* 786 A.2d 255 (Pa. Super. 2001).

The defendants also contended that the court erred in dismissing their claim for title by virtue of the doctrine

of consentable line because: (A) the holding of *Torch* allegedly does not apply in a case where a fence demarks a visible consentable line that provides prospective purchasers with notice of a property line that is not removed by a tax sale; and (B) purchasers at a public tax sale receive the property subject to whatever the purchaser discovers from physical inspection of the property unless excepted by the Real Estate Tax Law pursuant to the case authority of *Frey v. Beaver County Tax Claim Bureau*, 687 A.2d 57 (Pa. Cmwlth. 1996). (Concise statement, Paragraph 2).

However, in the instant case, the prescription period for establishing the claim or defense of consentable line was also ended by the county's conveyance of this property as statutory trustee to plaintiff's predecessor owner in 1992. In positing that the 1992 tax purchaser's failure to object to the "defect" of the visible boundary of the fenced area overcame the statutory provisos that the sale of this property discharged all prior tax claims, liens, mortgages and other claims on a property, the defendants admitted that a new prescriptive period for the establishment of possession of the fenced area pursuant to the doctrine of consentable line began only 19 and not the requisite 21 years ago. (Defendants' additional memorandum in support of their motion for post-trial relief, pp. 12-13) *Plauchak v. Boling*, 653 A.2d 671 (Pa. Super. 1995); *Torch v. Constantino*, supra. Indeed, the defendants presented no evidence of uninterrupted consent by neighboring owners to the fence line since 1981, having rested their reliance on this theory upon the belief that the county was required to possess title to this property in order for the adverse possession prescription period to be tolled.

For all of the foregoing reasons, there was no legal error

in the court's ruling that the defendants failed to meet their burden of establishing a right of ownership of the Fenced Area by adverse possession or pursuant to the doctrine of consentable line.

*2. The Plaintiff's Conveyance of the Portion of the Fenced Area in Lots 1 and 2 to Itself in the Absence of Subdivision Approval Does not Control the Outcome of this Case*

The defendants contended that the court erred in finding that plaintiff had retained title, or the right to title, to the fenced area even though plaintiff did not comply with the subdivision ordinance of Delaware County with regard to requirements for recognition of a separate "lot," and in granting ejectment against the defendant where plaintiff had allegedly violated the criminal laws of Delaware County in attempting to retain the fenced area in violation of the Delaware County subdivision ordinance. (Concise statement, Paragraphs 3 and 4)

The plaintiff's alleged failure to comply with governmental requirements when it retained the portion of the fenced area adjacent to Lot 2 and reconveyed to itself the portion of the fenced area adjacent to Lot 1 purportedly in violation of subdivision ordinances requiring conformity of property to a specific lot size without prior governmental approval is a land use issue that has no effect upon the equitable determination of whether or not the plaintiff has the right to title and ownership of this property. *Guido v. Township of Sandy*, 880 A.2d 1220 (Pa. 2005); *Riverwatch Condominium Owners Association v. Restoration Development Corporation*, 980 A.2d 674 (Pa. Cmwlth. 2009); *Holden v. Kay*, 601 A.2d 453 (Pa.

Cmwlth. 1991).

For all of the foregoing reasons, there was no error in granting ejectment of the defendants from the fenced area, even in light of allegations of the plaintiff's violation of subdivision and zoning ordinances applicable to the facts and circumstances at issue before the court.

*3. The Defendants' Objections to the Spirit and Wording of the Court's Judgment in Possession are Waived for Being Mere Boilerplate Contentions and/or the Failure to Raise and/or Argue Them Prior to this Appeal*

The defendants' claimed that this court's judgment in possession erroneously ordered and decreed that: "... the plaintiff, A & F Builders, LLC shall have immediate possession of the certain strip of ground situate in the Township of Darby, County of Delaware, Commonwealth of Pennsylvania, UPI Number 15-00-03215-01...," because UPI Number 15-00-03215-01 was assigned to the property which plaintiff transferred to Sonja A. Arnold. (Concise statement, Paragraph 5) There is no indication in the record of the preservation of this boilerplate issue by means of the presentation of appropriate or supporting legal argument prior to this appeal and it must, therefore, be deemed waived. Pennsylvania Rule of Civil Procedure 227.1(b)(1); Pennsylvania Rule of Appellate Procedure 302(a); *Frank v. Peckich*, 391 A.2d 624, 632-633 (Pa. Super. 1978) (issues raised in post-trial motions must not be boilerplate and must be supported by appropriate legal argument setting forth theories in support thereof); *Dilliplaine v. Lehigh Valley Trust Co.,* supra. Furthermore, the said UPI Number applies to the entire parcel deeded to the plaintiff, including the entirety of the fenced area,

rendering this contention to be without merit.

The defendants' next contention was that Paragraph 1 of the judgment is in error because: (A) David Lea Co., L.P. has never had title to the fenced area or filed of record any plan, document, obligation or deed or other instrument with regard thereto; and (B) if David-Lea Co., L.P. executes such a deed for the fenced area, it would create an illegal subdivision, and the court may not order David-Lea Co., L.P. to execute an illegal act. (Concise statement, Paragraph 6) These contentions too must be deemed waived for being raised for the first time on appeal, as well as for being boilerplate utterly unsupported by appropriate legal argument. Pennsylvania Rule of Civil Procedure 227.1(b)(1); Pennsylvania Rule of Appellate Procedure 302(a); *Frank v. Peckich*, supra; *Dilliplaine v. Lehigh Valley Trust Co.*, supra. The defendants final allegation on appeal is that paragraphs two and three of the judgment in possession ordering that the fence surrounding the fenced area and the parking lot constructed within the fenced area be removed and the property restored to its condition prior to the construction of the fence and parking lot are in error because: (A) removal and restoration will not benefit the plaintiff because plaintiff cannot develop the fenced area as it has not retained an access easement to the fenced area, and the Fenced Area does not conform to the Zoning Ordinance of Darby Township and cannot be developed; and (B) it is an abuse of judicial discretion since such fence and parking area existed on the property for over twenty-one (21) years when plaintiff purchased legal title to the property containing the fenced area. (Defendants' concise statement of matters complained of on appeal,

paragraph 7). These contentions are boilerplate recitations of contentions related to the defendants' defenses to this action. The matter of whether or not the plaintiff will need an easement in order to access the fenced area after reclamation thereof in its original state is, in a word, irrelevant.

The merits of the second contention raised in Paragraph 7 of the defendants' concise statement have already been fully discussed in this opinion and need no further vetting at this juncture.

## CONCLUSION

In a non-jury case such as this, appellate review is limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. *Showalter v. Pantaleo*, 9 A.3d 233, 235 (Pa. Super. 2010). Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. *Id.* The evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected. *Id.*, citing to *Shaffer v. O'Toole*, 964 A.2d 420, 422 (Pa. Super. 2009) (quoting *Hart v. Arnold*, 884 A.2d 316, 330-331 (Pa. Super. 2005), *app. den.*, 587 Pa. 695, 897 A.2d 458 (2006)).

Moreover, "[t]he trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the

court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence." *Showalter v. Pantaleo*, supra, 9 A.3d at 235, citing to *Shaffer v. O'Toole,* supra, 964 A.2d 422-223. Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the lower court. With regard to such matters, the scope of review is plenary as it is with any review of questions of law. *Id.*

In the case sub judice, the defendants waged a valiant battle seeking this court's invalidation of the holding in the case authority of *Torch v. Constantino*, supra, that adverse possession cannot lie against a government entity acting as trustee in selling a property subject to sheriff's sale even though it did not obtain title or ownership of the property in question since *Torch* explicitly held that a delinquent tax sale was a governmental function and that "adverse possession does not run against the political subdivisions holding land for tax sales for nonpayment of taxes, *as trustee*, the gravamen of the defendants' defenses of adverse possession and consentable line to the plaintiff's cause of action in Ejectment evaporated." *Torch v. Constantino*, supra, 323 A.2d at 281. (Emphasis Added).

For all of the foregoing reasons, there was no error of law, nor abuse of this court's sound discreation in entering the within judgment in possession in favor of the plaintiff and this ruling ought not to be reversed.