453 A.2d 611

**N. William EDMONDSON and Phyllis Edmondson, his wife, and Andy Malinish and Lois F. Malinish, his wife, Appellants,**

v.

**Fred DOLINICH and Dorothy Dolinich, his wife.**

Superior Court of Pennsylvania.

Argued March 16, 1982.

Filed Nov. 30, 1982.

Petition for Allowance of Appeal Denied June 8, 1983.

Richard F. Flickinger, Ligonier, for appellants.

Barbara A. Roth, Latrobe, for appellees.

Before SPAETH, JOHNSON and HOFFMAN, JJ.

SPAETH, Judge:

This appeal is from a judgment granting possession of a fifteen foot wide alley to appellees. The lower court held that appellees had acquired title to the alley by adverse possession. We have concluded, however, that appellees proved only sporadic and non-exclusive use of the alley. We therefore reverse.

Prior to this action both appellants and appellees acquired an easement over the alley by virtue of its description in their deeds. *See Hoover v. Frickanisce,* 169 Pa.Super. 443, 82 A.2d 570 (1951). On July 12, 1979, however, appellees filed a declaration of adverse possession in the Office of the Recorder of Deeds of Westmoreland County against appellants.[1] Appellees responded by filing this action in ejectment. After a hearing the trial judge found that appellee had acquired title to the alley by adverse possession. On appellants' exceptions, the court *en banc* dismissed the exceptions and adopted the trial judge's opinion.

In *Conneaut Lake Park Inc. v. Klingensmith,* 362 Pa. 592, 594–95, 66 A.2d 828, 829 (1949), the Court stated:

[O]ne who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty one years . . . . Each of these elements must exist, otherwise the possession will not confer title . . . .
[Citations omitted.]

And in *Parks v. Pennsylvania R.R. Co.,* 301 Pa. 475, 481–82, 152 A. 682, 684 (1930), it stated:

A sporadic use of land, by one without title to it, will not operate to give him a title, no matter how often repeated . . . . It is true that residence is not necessary to make an adverse possession within the statute of limitation; the possession may be adverse by enclosing and cultivating the land . . . but nothing short of an actual possession, permanently continued, will take away from

---

1. The declaration of adverse possession was also filed against John and Mary Deiss, who were appellants' predecessors in title.

the owner the possession which the law attaches to the legal title; temporary acts on the land, without an intention to seat and occupy it for residence and cultivation or other permanent use consistent with the nature of the property, are not the actual possession required.... Such occupation must be exclusive, and of such a character as compels the real owner to take notice of the possession of the disseisor....

[Citations omitted.]

It was the opinion of the lower court that appellees' evidence satisfied these requirements. Thus the trial judge said:

In the testimony taken at the hearing defendants [appellees] established that they, since 1951 to the present, have maintained the portion of the alley adjoining their property, erected and maintained two fences; planted trees and shrubs; left a rail and wood pile on the alley. Neither the plaintiffs [appellants] nor their predecessors attempted to use the alley.

Slip op. at 2.

Also:

It is fundamental that there must be actual, continual, visible, notorious, adverse and hostile possession of the land for twenty-one (21) years to constitute adverse possession. *Piper v. Mowris,* 466 Pa. 89 [351 A.2d 635] (1976). Defendants have proven all of these through their testimony concerning use of the alley. The photographs introduced and admitted into evidence clearly show the planting, fencing and blocking of the easement. Dates were established for all of the photographs convincing this Court that the adverse use has continued openly for over twenty-one (21) years.

Slip op. at 3.

However, our own review of the evidence persuades us that appellees failed to prove adverse possession. In saying this, we do not mean that we question the lower court's findings of fact. Findings supported by the evidence and approved by a court *en banc* have the same binding effect on us that a

jury verdict does. *In re Wertman's Estate,* 462 Pa. 195, 340 A.2d 429 (1975); *Girard Trust Bank v. Sweeney,* 426 Pa. 324, 231 A.2d 407 (1967); *Girard Trust Corn Exchange Bank v. Brinks, Inc.,* 422 Pa. 48, 220 A.2d 827 (1966). Where we differ with the lower court is on the legal conclusion—the conclusion of adverse possession—to be drawn from the facts, as the lower court found the facts. We are always free to draw, and indeed must draw, our own legal conclusions. *Wright v. Buckeye Coal Co.,* 290 Pa.Super. 231, 434 A.2d 728 (1981); *Silo Realty Corp. v. Redevelopment Authority of Philadelphia,* 289 Pa.Super. 67, 432 A.2d 1053 (1981); *First Pennsylvania Banking & Trust Co. v. Liberati,* 282 Pa.Super. 198, 422 A.2d 1074 (1980).

Both appellants testified in support of their adverse possession claim. Fred Dolinich's testimony was that he had maintained the alley and used it for storage. The gist of his testimony was as follows:

Q. Would you describe for the Court your activity with respect to the alleyway?

A. Well, when I first moved there, the alleyway was absolutely grown up. Very much so. There was a fence with barbed wire on it, and there was also brush of all kinds on it.

Q. What did you do to the alley?

A. I decided after I had been there about a year and a half or two years to clean it up and make it look presentable.

Q. How did you do that?

A. First of all, I took out all the posts, the barbed wire, and etc., etc. meaning that I cleaned it off.

Q. What did you do to it after you had cleaned it off.

A. Well, in some spots I replanted. I put grass back onto it. Then I added a hedge around the front of my property that faces 711, and it seemed every morning I got up I had to pick up garbage from back of the hedge so I decided to take it out and put a fence up.

Q. When you put the fence up along the front of your property, what did you do with respect to the alley?

A. I ran it on up the alley about I would say . . . I think there's about twelve panels of fence.

Q. Now, where was this fence on the alley? Was it on your side of the alley or on Mr. Deiss's side of the alley or where?

A. The fence that I put up is approximately . . . well, I would say on the alley at some spots and some spots it is off the alley.

Q. Off the alley where?

A. In front fronting my property on 711.

Q. All right. Now, Mr. Dolinich, for the record are you talking about a post and rail fence?

A. Yes, ma'am.

Q. Was there a fence ever on that alley prior to that post and rail fence?

A. There were two fences prior to that.

Q. Would you describe for the Court what kind of fences they were and what years you had them on the alley.

A. In 1951 when I moved there, there was a barbed wire fence there which I tore down. Then I put a fence up that was a board fence.

Q. What color was it?

A. It was white.

Q. Where was the fence?

A. Approximately the same place where this one is right now.

Q. And what year did you say you put that fence up?

A. Well, truthfully, I can't give you an exact year if you're speaking of that board fence?

Q. Yes.

A. I would say it was around '56, somewhere in there.

Q. Mr. Dolinich, what did you use this alleyway for?

A. To be truthful about it I used it to store most anything I could keep off my lawn such as posts and rail, and I had . . . well, at one time I had an ash pile on it.

Q. All right.

A. Another time I had a concrete block pylon [*sic;* "pile on it"?]. Another time I had a rail pylon [*sic*], and recently for the last ten, twelve years, maybe longer than that, I've had something on it. Right now there's post and rail on it.

Q. Did you ever plant anything besides grass in the alley?

A. I planted a peach tree on it, yes, ma'am.

Q. When did you plant the peach tree, do you remember?

A. About twelve years ago.

Q. Did you plant anything on the alley prior to the peach tree?

A. No. Well, no, I did not.

Q. How long have you cared for this alley, Mr. Dolinich in terms of, for example, mowing the grass?

A. Well, really I would have to say from about 1953.

N.T. 36–39.

On cross-examination Mr. Dolinich was asked whether he still stored things in the alley, and he replied:

A. Some of them, yes.

Q. But you removed most of this?

A. Most of them, yes, I cleaned it up.

N.T. 52.

Also, he acknowledged that one of appellants, N. William Edmondson, had about three years before put up a commercial sign, evidently in the alley ("in front of my property"), and despite a request, had refused to remove it. N.T. 52–53.

Dorothy Dolinich added to her husband's testimony that "[a]bout four years ago" she had planted a rhubarb patch in the alley, and that "[p]erhaps [she had done] some of the care of the flowers although he [Mr. Dolinch] does most of it." N.T. 56–57.

 In our opinion, appellees have established nothing more than sporadic and non-exclusive use of the alley.

Their use of the alley for storage was temporary, something being stored for awhile and then being cleared away, and the storage never blocked the alley. The fences they erected did not enclose the alley.[2] It is a serious matter indeed to take away another's property. That is why the law imposes such strict requirements of proof on one who claims title by adverse possession. *Parks v. Pennsylvania R.R. Co., supra.*

The judgment of the lower court is reversed and judgment is entered in favor of appellants.

**2.** The photographs identified by Mr. Dolinich confirm our characterization of appellees' use of the alley. Exhibit C is a photograph of the Dolinich "yard." N.T. 39. The record does not make clear just where the alley appears ("this is the alleyway here," N.T. 39, with where "here" is not being shown), but wherever it is, it is in no sense blocked off. Exhibit D shows a small part of the alley, with a flower garden on part of it. N.T. 41. Exhibit E shows, in the background, a small part of the alley, with part of a fence erected by appellees on the alley. N.T. 41–42. Exhibit F also shows part of the fence. N.T. 42. Exhibit G shows part of the alley, with some locust posts stood on end and leaning against each other; they occupy very little space. N.T. 43. Exhibit H shows some posts and rails stored on the alley, N.T. 44; they were used to erect a fence, N.T. 46. Exhibit I shows the alley with a pile of posts, a peach tree, and a mulch pile in it. N.T. 47. Exhibit J is similar to Exhibit I; it shows the peach tree and part of the mulch pile, but not the posts. *Id.* And Exhibit K shows the peach tree and even less of the mulch pile. *Id.* It is evident from all of these last three exhibits that the pile of posts, peach tree, and mulch pile did not block but occupied only a small part of the alley.