Harry D. SHOWALTER and Christine
Showalter, Appellants

v.

John N. PANTALEO, Appellee.

Superior Court of Pennsylvania.

Submitted Aug. 30, 2010.

Filed Nov. 18, 2010.

Craig E. Wynn, Aliquippa, for appel-
lants.

Albert A. Torrence, Beaver, for appellee.

BEFORE: PANELLA, SHOGAN and CLELAND *, JJ.

OPINION BY SHOGAN, J.:

Appellants, Harry D. Showalter and Christine Showalter, appeal from the judgment entered in favor of Appellee, John N. Pantaleo, on February 3, 2010, following the trial court's determination that a landowner's bankruptcy defeated Appellants' claim of adverse possession. For the reasons that follow, we affirm.

The trial court set forth the relevant facts and underlying procedural history of this matter as follows:

> [Appellants] purchased a home located at 424 West Main Street, in West Aliquippa, Pennsylvania, on July 31, 1979. Within the first week of owning this home, [Appellants] began to maintain the vacant lot adjacent to the home. This lot, along with several other vacant lots in West Aliquippa, was owned by LTV Steel. LTV Steel gave permission to certain residents of West Aliquippa to use these vacant lots to plant gardens. There was no evidence that [Appellants] or their predecessors used this lot with permission of LTV.

> When [Appellants] purchased the property, the vacant lot was overgrown with weeds about 5 feet high. [Appellants] cut the weeds, tilled the lot, and trimmed the trees. Over the course of almost 30 years, they removed some trees and planted others on the lot. They removed part of a fence. They used the lot for a kiddie pool and swing set for their children. Their dogs and children played in the lot. They cut the grass on a regular basis, and they used the lot to park their trailer. There was approximately one year, (May 1985–May 1986), when the [Appellants] separated, and Mr. Showalter did not occupy the residence. However, Mrs. Showalter remained in the marital home, and she continued to maintain the lot until Mr. Showalter returned.

> On July 17, 1986, the record owner of the property, LTV, filed a petition for bankruptcy in the United States Bankruptcy Court for the Southern District of New York. About seven years later, on May 26, 1993 the bankruptcy court approved a sale of certain LTV assets and property, including the vacant lot in question to an Alabama company, ALA. A few months later in August 1993, ALA then sold the lot and other property to a local company, Bet–Tech International. Almost fifteen years later, on February 16, 2008 Bet–Tech sold the lot to the [Appellee].

> Following the sale of the lot to the [Appellee], [Appellants] initiated this lawsuit. [Appellants] claim they have satisfied all of the requirements of adverse possession, thus entitling them to ownership of the lot.

Trial Court Opinion, 10/16/09, at 1–2.

Following a non-jury trial, the trial court initially entered a verdict in favor of Appellants. However, Appellee filed a post-trial motion. After consideration of Appellee's motion, the trial court reversed its decision and entered judgment in favor of Appellee. Appellants timely appealed.

■ On appeal Appellants raise one issue for this Court's consideration:

> Did the lower court commit error in the application of law when it found that appellants could not prove the element of continuity in their claim for adverse possession as a result of the record owner's filing for bankruptcy prior to the

* Retired Senior Judge assigned to the Superior Court.

date their 21–year period of occupancy had expired?

Appellants' Brief at 4.

■ In a non-jury case such as this, our review is

limited to a determination of whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in the application of law. Findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as a verdict of a jury and will not be disturbed on appeal absent error of law or abuse of discretion. When this Court reviews the findings of the trial judge, the evidence is viewed in the light most favorable to the victorious party below and all evidence and proper inferences favorable to that party must be taken as true and all unfavorable inferences rejected.

*Shaffer v. O'Toole,* 964 A.2d 420, 422 (Pa.Super.2009) (quoting *Hart v. Arnold,* 884 A.2d 316, 330–331 (Pa.Super.2005), *appeal denied,* 587 Pa. 695, 897 A.2d 458 (2006)) (citations omitted). Moreover,

[t]he trial court's findings are especially binding on appeal, where they are based upon the credibility of the witnesses, unless it appears that the court abused its discretion or that the court's findings lack evidentiary support or that the court capriciously disbelieved the evidence. Conclusions of law, however, are not binding on an appellate court, whose duty it is to determine whether there was a proper application of law to fact by the lower court. With regard to such matters, our scope of review is plenary as it is with any review of questions of law.

*Shaffer,* 964 A.2d at 422–423 (internal quotation marks and citations omitted).

■ The elements necessary to establish adverse possession are as follows:

Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. Accordingly, the grant of this extraordinary privilege should be based upon clear evidence. *Edmondson v. Dolinich,* 307 Pa.Super. 335, 453 A.2d 611, 614 (Pa.Super.1982) ("It is a serious matter indeed to take away another's property. That is why the law imposes such strict requirements of proof on one who claims title by adverse possession.") One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. Each of these elements must exist; otherwise, the possession will not confer title.

*Recreation Land Corp. v. Hartzfeld,* 947 A.2d 771, 774 (Pa.Super.2008) (quoting *Flannery v. Stump,* 786 A.2d 255, 258 (Pa.Super.2001) (certain citations omitted), *appeal denied,* 569 Pa. 693, 803 A.2d 735 (2002)).

Here, the trial court concluded that Appellants failed to establish continuous possession of the property for a period of twenty-one years. Trial Court Opinion, 10/16/09, at 4. The court's conclusion was based on the fact that the record owner of the property, LTV, declared bankruptcy in 1986, interrupting Appellants' continuity of possession. *Id.* and Trial Court Opinion Pursuant to Rule 1925(a), 3/31/10, at 2. Appellants argue that, under Pennsylvania law, the element of continuity in adverse possession can only be defeated by an act of the possessor rather than an act of the record owner. Appellants' Brief at 11. We disagree.

Initially, we note that our research reveals no Pennsylvania case law on point. However, the trial court was persuaded by

a case from Illinois. Trial Court Opinion, 10/16/09, at 4 and Trial Court Opinion Pursuant to Rule 1925(a), 3/31/10, at 2. After review, we agree with the trial court's analysis and are likewise persuaded by the Illinois decision.

In *General Iron Industries, Inc. v. A. Finkl and Sons Co.*, 292 Ill.App.3d 439, 226 Ill.Dec. 652, 686 N.E.2d 1 (1997), the Appellate Court of Illinois was faced with a factual scenario similar to the one at bar. On December 19, 1977, the Chicago, Milwaukee, St. Paul, and Pacific Railroad Company ("Landowner") filed for bankruptcy. *General Iron,* 226 Ill.Dec. 652, 686 N.E.2d at 2. On November 25, 1985, a final decree in bankruptcy was entered. *Id.* In August 1988, the property at issue in that case was conveyed by quitclaim deed to A. Finkl and Sons Co. *Id.* In September 1990, A. Finkl and Sons Co. informed General Iron Industries, Inc. that it was the owner of the property at issue and to which General Iron Industries, Inc. claimed title. *Id.* On August 15, 1991, General Iron Industries, Inc. asserted that it had acquired title to the property through adverse possession and

sought a declaratory judgment. *Id.* On October 4, 1991, A. Finkl and Sons Co. filed a complaint for ejectment. *Id.* The cases were consolidated, and after the filing of cross motions for summary judgment, the trial court denied General Iron Industries, Inc.'s motion and granted A. Finkl and Sons Co.'s motion for summary judgment in an order filed May 30, 1995.[1] *Id.*

On appeal, the Appellate Court of Illinois concluded that General Iron Industries, Inc. could not establish the elements of adverse possession because it could not prove possession for the required period of time. *General Iron,* 226 Ill.Dec. 652, 686 N.E.2d at 5. The Illinois court held that a landowner's petition for bankruptcy protection interrupts a claimant's continuity of possession, because upon the filing of the petition in bankruptcy all of the property in the bankruptcy estate is regarded as *in custodia legis,* or in the custody of the law. *Id.*[2]

We find the analysis employed in *General Iron* appropriate for the case at bar.[3] Upon LTV's filing for bankruptcy in 1986, the subject property was part of the bank-

---

1. Aside from the 21–year time period versus 20–year time period, the Illinois and Pennsylvania adverse possession requirements are nearly identical. *See General Iron,* 226 Ill. Dec. 652, 686 N.E.2d at 2 ("[t]o establish title by adverse possession under the 20–year limitations statute, a party must prove that his possession was (1) continuous; (2) hostile or adverse; (3) actual; (4) open, notorious, and exclusive; and (5) under a claim of title inconsistent with that of the true owner.").

2. Appellants argue that *General Iron* is inapplicable because it was a debtor-railroad case under § 77 of the Bankruptcy Act of 1898, which has since been repealed. While owners of railroads were treated separately under the Bankruptcy Act of 1898, the current Bankruptcy Act does not make such a distinction relevant or alter the result in the instant case. Pursuant to the Bankruptcy Reform Act of 1978, 11 U.S.C.A. §§ 101 *et seq.*:

The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case.
11 U.S.C.A. § 541(a)(1). Thus, the fact that LTV was not a railroad is irrelevant, because by commencing the bankruptcy case, all interest it had in the subject property became part of the bankruptcy estate.

3. *See also Coppard v. Stanush,* 258 S.W. 254 (Tex.Civ.App.1924) (stating that the filing of a petition in bankruptcy interrupts a claim of adverse possession by putative adverse possessor because the property during bankruptcy is in the custody of the court).

ruptcy estate until it was conveyed to ALA in 1993. As such, Appellants' possession of the subject property was interrupted. Appellants cannot establish that they have met the requirements for adverse possession for a continuous period of 21 years, because the subject property was part of the estate in bankruptcy for seven of those years. Therefore, the trial court committed no error of law or abuse of discretion in entering judgment in favor of Appellee.[4]

For the reasons set forth above, we conclude that Appellants are entitled to no relief. Accordingly, we affirm the judgment entered on February 3, 2010, in the Beaver County Court of Common Pleas.

Judgment affirmed.

---

4. Appellants' argue that, pursuant to 42 Pa. C.S.A. § 5535(b) (concerning stays in civil proceedings), LTV's filing for bankruptcy in 1986 tolled their claim for adverse possession. At the time that LTV filed for bankruptcy, Appellants had no claim that could be tolled.

The earliest time at which Appellants arguably had a claim for adverse possession was July 31, 2000, 21 years after Appellants purchased the property adjacent to the subject property.