J-A27042-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JAWDAT A. NIKOULA AND ANTOINETTE N. NIKOULA, Husband and Wife, | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| SCOTT S. VALERIO, | : | |
| | : | |
| Appellee | : | No. 243 WDA 2014 |

Appeal from the Judgment entered on March 13, 2014
in the Court of Common Pleas of Westmoreland County,
Civil Division, No. 75 of 2011

BEFORE:  FORD ELLIOTT, P.J.E., OLSON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:            **FILED OCTOBER 31, 2014**

Jawdat A. Nikoula and Antoinette N. Nikoula (collectively referred to as "the Nikoulas") appeal from the Judgment declaring Scott S. Valerio's ("Valerio") ownership in fee simple absolute to disputed property, after a finding that Valerio had established all elements of adverse possession.  We affirm.

The trial court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal.  ***See*** Trial Court Opinion, 10/28/13, at 1-5.

On October 28, 2013, the trial court entered an Order stating that Valerio had established the elements of adverse possession.  The Nikoulas filed Exceptions and a Motion for Post-Trial Relief, both of which the trial

court denied. Subsequently, Judgment was entered in favor of Valerio. The Nikoulas then filed a timely Notice of Appeal.

On appeal, the Nikoulas ask us to consider "[w]hether the lower court erroneously concluded that [Valerio has] proven, by clear and convincing evidence, [his] affirmative defenses in this matter, by proving all elements of adverse possession as to the disputed property." Brief for Appellants at 3 (internal quotation marks omitted).

> Our appellate role in cases arising from non-jury trial verdicts is to determine whether the findings of the trial court are supported by competent evidence and whether the trial court committed error in any application of the law. The findings of the trial judge in a non-jury case must be given the same weight and effect on appeal as the verdict of a jury, and the findings will not be disturbed on appeal unless predicated upon errors of law or unsupported by competent evidence in the record. Furthermore, our standard of review demands that we consider the evidence in a light most favorable to the verdict winner.

*Levitt v. Patrick*, 976 A.2d 581, 588-89 (Pa. Super. 2009) (citation omitted).

The Nikoulas argue that the trial court erred in holding that Valerio had proven, by clear and convincing evidence, each element of adverse possession. Brief for Appellants at 11, 26. The Nikoulas claim that the trial court erred in finding that Valerio's possession of the disputed land was hostile, based on Valerio's belief that he owned the property. *Id.* at 12-15. The Nikoulas also contend that the trial court erred in finding that Valerio had established the "actual possession" element of adverse possession

because the disputed property should be classified as a "woodland," thus requiring a stricter standard to prove actual possession. *Id.* at 15-20.

Additionally, the Nikoulas argue that the trial court erred in finding that Valerio had established that his possession of the disputed property was open, visible and notorious because, due to the terrain on the Nikoulas' property, a reasonable inspection of the property would not have placed them on notice of Valerio's use. *Id.* at 20-25. The Nikoulas also claim that the trial court erred in finding that Valerio had established the "continuous use" element of adverse possession because generic maintenance of the disputed area was insufficient to prove continuous use, and because the trial court did not analyze on what date the pet burials began to encroach on the Nikoulas' property. *Id.* at 25-26.

The trial court set forth the relevant law, as well as its analysis, regarding each element of an adverse possession claim, and concluded that Valerio had established adverse possession of the property. *See* Trial Court Opinion, 10/28/13, at 5-15. We agree with the sound reasoning of the trial court, and adopt its analysis for the purpose of this appeal. *See id.*

As an addendum, we note that the Nikoulas rely on this Court's

decision in **Flannery v. Stump**, 786 A.2d 255 (Pa. Super. 2001),[1] to assert that Valerio could not prove by clear and convincing evidence that his possession of the disputed parcel was hostile, because Valerio believed that he owned the land. Brief for Appellant at 13-15. However, the Nikoulas misunderstand this Court's reasoning in **Flannery**, which specifically stated that

> [e]ven if we were to accept the claim that [the appellee] used the parcel under the mistaken belief that it was part of his land, [the appellee's] act in exceeding the boundaries of his purchase could only be seen as a permissive encroachment used at the sufferance of the true owner.

**Flannery**, 786 A.2d at 260.

Thus, while evidence of permissive use of a disputed parcel is sufficient to disprove the hostility requirement of an adverse possession claim, a mistaken belief of ownership is not sufficient to prove a lack of hostile intent. Here, the record demonstrates that Valerio's use of the disputed parcel was not permissive. **See** Trial Court Opinion, 10/28/13, at 13; **see also** N.T., 8/14/13, at 54, 62, 77. Therefore, upon review, we agree with the trial court's finding that Valerio's use of the Nikoulas' property was hostile. **See Brennan v. Manchester Crossings, Inc.**, 708 A.2d 815, 818 (Pa. Super. 1998) (stating that "[t]he word hostile, as an element of adverse

---

[1] In **Flannery**, the appellee leased and farmed a parcel of land, and, under the mistaken belief that the disputed parcel was owned by the lessor, appellee also farmed a rectangular portion of the appellant's property. **See Flannery**, 786 A.2d at 257, 259. This Court concluded that the appellee had acted without the requisite hostile intent because he farmed the property believing that he was a subservient tenant. **See id.** at 259-61.

possession[,] does not mean ill will or hostility, but implies an assertion of ownership rights adverse to that of the true owner and all others.") (quotation marks omitted).

Judgment affirmed.

Olson, J., joins majority.

Ford Elliott, P.J.E., notes dissent.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/31/2014

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA
CIVIL ACTION - LAW

JAWDAT A. NIKOULA, and )
ANTOINETTE N. NIKOULA, )
Husband and wife, )
)
)
Plaintiffs, )
)
vs. )        No. 75 of 2011
)
SCOTT S. VALERIO, )
)
Defendant, )
)
)

OPINION

BY THE COURT:

A non-jury trial was held on August 14, 2013 in this ejectment and trespass action filed by the plaintiffs, Jawdat and Antoinette Nikoula against the defendant, Scott Valerio. This matter arises from a property line dispute relating to contiguous properties located between the southerly side of Route 136 (also known as West Newton Road) and the Radebaugh Branch of the former Pennsylvania Railroad, in Westmoreland County.

Following the conclusion of the non-jury trial, the Court entered an Order dated August 14, 2013, directing counsel for the parties to submit Findings of Fact, Conclusions of Law and a Proposed Order of Court to the undersigned, on or before September 13, 2013. The Court has received and reviewed the submissions of the parties, and hereby issues the within Opinion and Order of Court.

The Court heard testimony from the parties and a witness at trial. Defendant, Scott Valerio, called by plaintiff's counsel, as on cross, testified before the Court. Counsel for plaintiff then called plaintiff, Jawdat Nikoula to testify at trial. Counsel for defendant called a witness, defendant's wife, Laura Valerio, to testify at the trial. The parties stipulated to all Exhibits at trial. The Exhibits included: Plaintiff's Exhibits 1 through 19 and Defendant's Exhibits A through I. Further, the parties stipulated that the testimony of Joseph Valerio, Gerard Valerio and David Valerio would not be presented by counsel for defendant, as it would be cumulative, and essentially the same as defendant, Scott Valerio's testimony regarding the maintenance and mowing of the disputed property. The multiple exhibits that were entered into evidence at the non-jury trial, included, but were not limited to, the deeds to the properties, surveys, overhead aerial views, burial plot records for the pet cemetery, letters and numerous photos.

The Court also conducted a view of the subject disputed area of the property on August 14, 2013, with the attorneys of record and the parties. The Court has also weighed and considered the information received via said viewing of the property in issuing the within Opinion. After reviewing the testimony and evidence in this matter and for the following reasons, the Court concludes that defendants have proven, by clear and convincing evidence, their affirmative defense in this matter, by proving all elements of adverse possession as to the disputed property.

This matter involves a dispute between the parties as to the boundary line between their contiguous properties located in Hempfield Township, Westmoreland County. Plaintiffs acquired their parcel of property (hereinafter, "Nikoula" property) by Deed dated November 9, 1998, as recorded in Deed Book Volume 3635, Page 375, in the Office of the Recorder of Deeds in Westmoreland County. (See: Plaintiff's Exhibit 13). As per information from the pleadings in this matter, Plaintiffs acquired this 14.322 acre parcel of property from Plaintiff/wife's

2

parents, who had previously acquired the property by virtue of a Deed dated January 27, 1956, and recorded in Deed Book Volume 1575, Page 6, in the Office of the Recorder of Deeds in Westmoreland County. (See: Plaintiff's Exhibit 13). The Nikoula property was a tract that was conveyed from a larger property owned by the Kepples in 1956 to the Nikoulas' predecessors in title. (See: Plaintiffs' Exhibit 13). It is also noted that there was another Deed[1] in the Nikoula's chain of title.

Defendant acquired his parcel of property (hereinafter, referred to as "Valerio" property) from his parents, David and Betty Lou Valerio, by Deed dated July 1, 1995, in Deed Book Volume 3352, Page 175, in the Office of the Recorder of Deeds in Westmoreland County. (See: Defendant's Exhibit E). Defendant's parents, David and Betty Lou Valerio acquired the land from the Estate of Elizabeth R. Kepple, by Deed dated May 6, 1963, and recorded in Deed Book Volume 1857, Page 751, in the Office of the Recorder of Deeds in Westmoreland County. (See: Plaintiffs' Exhibit 11).

The Valerio property contains 2.068 acres, and was marked as Parcel "A" in the Valerio Subdivision, prepared by Robert T. Regola, dated May 1995, and recorded in Plan Book Volume 90, Page 2274, in the Office of the Recorder of Deeds in Westmoreland County. (See: Plaintiffs' Exhibit 10). The Valerio parcel, contains a pet cemetery business, known as "Pet Haven Cemetery" that was started in 1969 by David Valerio. (See: Trial Transcript, p.38; and Defendant's Exhibit A). In 1995, Defendant Scott Valerio acquired the business from his father, David Valerio. (See: Defendant's Exhibit B).

---

[1] A Deed dated May 25, 1973, conveyed the same tract or parcel (Nikoula property) from Joseph E. Nader and Joan Nader, his wife, to Joseph E. Nader and Joan Nader, his wife, stating that the purpose of said Deed was to revert the real estate herein to acreage. (See: Plaintiffs' Exhibit 13). This Deed was dated May 25, 1973 and recorded in Deed Book Volume 2127, Page 175, in the Office of the Recorder of Deeds in Westmoreland County.

3

The tracts of land conveyed to Plaintiffs and Defendant were both subdivided from the same larger tract known as the "Kepple" tract. The Plaintiffs' parcel is the senior tract, having been sold in 1956; with Defendant's tract being conveyed later, by deed in 1963. (See: Plaintiff's Exhibits 11 and 12). In 2003, Tri-County Engineering performed a survey using the deed description for the 1956 conveyance of the Nikoula property from the Kepples to the Nikoulas' predecessors in title and first noted the discrepancy in the boundary lines. Thereafter, Plaintiffs sent letters dated August 5, 2003 and November 6, 2003, to Defendant, to alert him to the issue. (See: Plaintiffs' Exhibits 17, 18 and 19).

Defendant then hired a surveyor, Richard R. Bourg, Jr., of Regola and Associates, in November of 2004, to conduct a boundary retracement survey (See: Plaintiff's Exhibit 15). Mr. Bourg, in a letter to defendant dated December 13, 2004, confirmed that there was a boundary overlap, or discrepancy, as initially indicated in the survey completed by John Vozel of Tri-County Engineering. (See: Plaintiff's Exhibits 14, 15 and 16). Mr. Bourg prepared a Deed Plot dated November 11, 2004 as to the discrepancy. (See: Plaintiff's Exhibit 16).

Based upon the above information, in 2011, Plaintiffs filed this lawsuit as an action with two Counts, Count I for Ejectment, and Count II for trespass and injunctive relief[2]. At trial, counsel for the parties agreed that the parties do not dispute the boundary line as set forth in the survey of Tri-County Engineering, dated January 21, 2010, a copy of which was marked as Plaintiff's Exhibit 2. Accordingly, plaintiffs have set forth a prima facie case in support of ejectment and trespass. The defense asserted to both Count I for Ejectment and Count II for trespass by the defendant is adverse possession of said disputed property. The trial was focused

---

[2]     Plaintiffs' Count II of the Complaint is for Trespass/Injunctive Relief, wherein Plaintiffs demand that the Defendant remove the pet cemetery that is on plaintiffs' property; that the defendant be permanently and forever enjoined and restrained from encroaching upon plaintiffs' property; that the plaintiffs be awarded damages for the said trespass and for restoration of plaintiffs' property following defendant's removal of the said artificial edifices; and that defendant shall pay the plaintiffs all sums he received from customers for the pet grave markers placed on plaintiffs' property.

4

on the issue of adverse possession and whether defendant met his burden of proving all elements therein.

It has long been the rule of this Commonwealth that one who claims title by adverse possession must prove that he had actual, continuous, exclusive, visible, notorious, distinct, and hostile possession of the land for twenty-one years. Conneaut Lake Park v. Klingensmith, 66 A.2d 828 (Pa. 1949). Each of these elements must exist; otherwise, the possession will not confer title. Piston v. Hughes, 62 A.3d 440, (Pa. Super. 2013). Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law. Accordingly, the grant of this extraordinary privilege should be based upon clear evidence. Showalter v. Pantaleo, 9 A.3d 233 (Pa. Super. 2010), citing Edmondson v. Dolinich, 453 A.2d 611 (Pa. Super. 1982).

In general, actual possession of land means dominion over the property. Recreation Land Corp. v. Hartzfeld, 947 A.2d 771 (Pa. Super. 2008), citing Bride v. Robwood Lodge, 713 A.2d 109 (Pa. Super. 1998). The requirements for "actual" possession of a property will necessarily vary based on the nature of the property. Id. Our case law has developed a rather strict standard for proving adverse possession of woodland. Id. A person establishes actual possession of a woodland by 'residence or cultivation of a part of the tract of land to which the woodland belongs'." Id., *Bride*, supra. The issue of whether a parcel of land is "woodland" appears to be a threshold factual question for the trial court to decide in the first instance. Id. (See also *Piston v. Hughes*, 62 A.3d 440, 443 (Pa. Super. 2013), quoting, *Bride, supra, at 112*, (stating that "[w]hat constitutes adverse possession depends, to a large extent, on the character of the premises.").

Based upon the foregoing, the Court initially must make a threshold factual determination as to the character of the subject property, in particular the disputed strip of land at issue.

5

Plaintiffs have owned their tract for 15 years, however they have never resided on said property, as the property contains approximately 14 acres of unimproved and undeveloped land. It should be noted that the land near the disputed area is unenclosed by any fence or other type of enclosure or barrier. It is undisputed that there are no structures or any type of residence on said land. It is clear from the Court's view and the evidence at trial (See: Defendant's Exhibits J1-J7; and Plaintiffs' Exhibit 1), that the majority of the subject 14 acre property contains thick trees and woods.

In this case, based upon the evidence at trial, and the Court's first-hand view of the subject property, the subject property is located along a very busy two-lane highway, with both commercial businesses and residences along both sides of said highway. This is not a case of vast forested land where actual possession of the whole is called into question. As noted, although it appears that the plaintiffs' larger tract currently contains thick trees and woods, the disputed tract constitutes only a tiny portion of plaintiff's overall tract and contains no woodlands. Finally, plaintiff's land did not always contain large trees, similar to any type of woodland. In fact, the Court notes that Defendant's clear testimony at trial, indicated that in the 1970s, when he was a child growing up on said property, he recalls the neighboring property as "an overgrown farm pasture with bushes and shrubs." (TT. p. 79). Further, Defendant recalled riding dirt bikes and ATVs along the property line to get to baseball practice in Carbon. (TT. pp. 78-79).

Moreover, the disputed subject property, or strip of land at issue in this case, constitutes a miniscule portion of plaintiffs' 14+ acre parcel, and measures approximately 27.57 feet in width at the widest point, according to the Tri-County Engineering LLC, Survey dated January 20, 2010. Most importantly, said disputed strip of land is clearly and unequivocally *not* woodland-type property. Therefore, this Court finds that the subject disputed land does not constitute

6

woodlands, such that defendant would be subject to more stringent standard, in reference to proving "actual" possession.

This case is unique. Even the portion of the tract that contains thick trees and shrubs, is not a typical 50 to 100 acre tract of woodlands located in a remote, non-populated, hard-to-access rural region; rather, it is a thick area of trees on land that is adjacent to a busy highway, with the surrounding area containing many commercial businesses and residences.

## ACTUAL POSSESSION

The evidence at trial showed that defendant's parents, David and Betty Valerio constructed a house on the original Valerio property in 1963 and moved into said house in November 1963. (Def. Exh. D, at pp. 11-12). Beginning in 1963, David Valerio removed trees and cut the grass on his property, including within the disputed area. (Def. Exh. D, pp. 12-13). David Valerio also seeded and landscaped the entire pet cemetery area including the disputed area from 1969 until he sold it in 1995 to his son, defendant herein. (Def. Exh. D, pp. 18-21). David Valerio would mow the entire pet cemetery property with his tractor, including the disputed area, approximately once per week, and his wife, used a push mower to mow in between the graves. (Def. Exh. D, at pp. 12-13, 20). David Valerio also planted shrubs and placed white concrete benches and patio stones in the disputed area. (Def. Exh. D, at pp. 42-43; 81-82).

With regard to Defendant Scott Valerio's actual possession of the disputed property, the Court notes that between 1977 and 2013, defendant continuously mowed the property at the pet cemetery including within the disputed area (Trial Transcript, pp. 42-43). In 1977, defendant began mowing said property at the age of 12. He continued to mow the property until he left his parent's home in approximately 1991. In 1991, defendant moved out of his parents' home but continued to cut the grass at the pet cemetery, and in the disputed area. (TT, pp. 31, 42). In

1995, Defendant purchased the property and the business from his father, David Valerio, and mowed the property from that time forward. (Def. Exh. B, E). It has been stipulated that defendant's older siblings, three brothers, David Valerio, Jr., Gerard Valerio and Joseph Valerio also maintained and mowed the original Valerio property. (TT. p. 10; Def. Exh. D, at p. 20).

Defendant also planted shrubs, placed benches, placed pet graves and continuously restored the surface of the disputed area since 1977, by seeding and remediating the land, due to traversing the land for burials. (TT. pp. 42-43; 70-72). Defendant's wife, Laura Valerio, also witnessed defendant, and assisted defendant, beginning in 1986 in planting shrubs in the disputed area and placing concrete benches there. (TT. pp. 57-58). Defendant and his brothers assisted their father, David Valerio, in the 1970's in grading the pet cemetery area and in measuring and laying out cemetery plots that included the disputed area. (TT. pp. 70-71). Importantly, defendant's pet cemetery business has animal graves and some graves have markers within the disputed area, as set forth in Plaintiff's Exhibits #1, 2 and 3. Therefore, equally relevant to the issue of actual possession, Defendant and Defendants' parents buried pets at the pet cemetery continuously from 1969 until the present time.

As noted, all of the aforementioned activities described were done first by David and Betty Valerio, and later, by their son, defendant, Scott Valerio. Therefore, the actual possession by defendant Scott Valerio may be "tacked on" to the actual possession by his predecessors, also his parents, David and Betty Valerio, due to the fact that there is privity between them. The possession of successive occupants may be tacked, but only where there is privity between them. Glenn v. Shuey, 595 A.2d 606, at 612, (Pa. Super. 1991), citing Wittig v. Carlacci, 537 A.2d 29 (1988). For our purposes, "privity" refers to a succession of relationship to the same thing, whether created by deed or other acts or by operation of law. Id. The Wittig court noted: "Each predecessor must have claimed title to the property in dispute, and in transferring to his

8

successors must have purported to include it." Id. Here, based upon the foregoing, it is clear to this Court that there was privity between David and Betty Valerio and their son, Scott Valerio, vis-à-vis their activities on the disputed property, in particular mowing said land, seeding and planting shrubs, and burying pets on the land, all of which clearly demonstrated defendants' actual possession of said disputed property by showing physical ownership and dominion of said disputed property.

## OPEN, VISIBLE AND NOTORIOUS

The Court will now analyze the element of adverse possession referred to as open, visible and notorious. To establish adverse possession, possessory acts must be sufficiently visible and obvious to put a reasonable owner on notice that her property is being occupied by a non-owner with the intent of claiming possessory rights. Glenn, supra. The record owner is "charged with seeing what reasonable inspection would disclose."[3]

As noted extensively above, in this case, defendant and defendant's parents as predecessors before him, continuously mowed and maintained the area of the disputed property, and further, operated a commercial business that year by year, began to grow and spread into the disputed area, by the expansion of burial plots or graves for pets. This business was open to the public; and the customers who purchased burial plots and/or the general public were permitted to come onto defendant's property at any time to visit the pet graves and place flowers. (TT. pp. 38-39). In other words, there was unrestricted access to the pet cemetery property, including the disputed area of land at issue in this case. Based upon the unique facts of this case, the Court finds that there could not be a situation that was **more** open and notorious than what occurred in this case, i.e., the act of burying pets on defendant's property, with highly visible markers,

---

[3] William B. Stoebuck & Dale A. Whitman, *The Law of Property* §11.7, at 856 (3d ed. 2000).

9

benches and memorials, which over time, naturally gravitated towards the perimeter of defendant's land, into the disputed property area. (See: Plaintiff's Exh. 3).

The evidence at trial indicated that even though plaintiffs took ownership of their property in 1998, they had never been on their property in the area of the disputed property until the parties viewed the property with the Court *on the day of trial, as part of this proceeding.* (TT, pp. 47; 49-50). **More importantly, plaintiffs presented no evidence to dispute the testimony of the defendant and his predecessors in title as to any activity that defendant or his predecessors may have undertaken in the disputed area.** (TT, pp. 52-53).

The Court is not persuaded by plaintiff's argument that they did not have access in any manner to the subject disputed area of their property, due to the denseness of the trees and the location of said property. This Court agrees that the property, in particular the disputed area of the property is in a somewhat unique location; however, as noted previously, the disputed area of the property was, at all times, from 1969 forward, open to the general public as a cemetery where people could go and visit their pets. There was nothing preventing plaintiffs from accessing the disputed area of the property, in particular once they became aware of a discrepancy in the property line in approximately 2003. In fact, plaintiffs waited another eight years before instituting litigation as to the disputed property line. In the meantime, defendant continued his pet cemetery business. (See: Plaintiff's Exhibits 4, 5, 6, 7, 8, and 9). The fact that plaintiffs never chose to inspect or view their property during their fifteen years of ownership (prior to 2003) should not be held against defendant and his claim for adverse possession.

Based upon the foregoing, the Court had determined that defendant has met the burden of proving that defendant and defendant's predecessor's use of the land as a pet cemetery and mowing and other activities were open, visible and notorious in this matter.

10

CONTINUOUS

In order for adverse possession to ripen into title, it is necessary to show that such possession has been continuous and uninterrupted for the full statutory period. Glenn, supra, citing Tioga Coal Co. v. Supermarkets General Corp., 433 A.2d 483 (1981). In this Commonwealth, as in most jurisdictions, the statutory period is twenty-one years. See: 42 Pa.C.S.A. §5530(a)(1). The law does not require that the claimant remain continuously on the land and perform acts of ownership from day to day. Id. A temporary break or interruption, not of unreasonable duration, does not destroy the continuity of the adverse claimant's possession. Id. Moreover, the activity on the property need not occur every day for it to be "continuous" for purposes of adverse possession. Ewing v. Dauphin County Tax Claim Bureau, 375 A.2d 1373 (Pa. Comwlth. 1977).

From 1963 to present, defendant and/or his parents and siblings regularly cut the grass, removed trees, and generally maintained the property up to and along a property line that they believed was the correct property line. The disputed area was a grassy area that was part of a lot that contained defendant's family's residence until the area was subdivided from the house property in 1995, pursuant to a plan of subdivision. (See: Plaintiff's Exh. 10). From 1969 to present, defendant and his family operated a pet cemetery on their property and undertook improvements and regular maintenance on the property, including the disputed area. Defendant and his predecessors undertook said activities, uninterrupted, since at least 1963. It was not until 2003 that plaintiffs or any other predecessor in title ever raised any objection.

In this case, the Court previously discussed the issue of privity and finds that it existed between defendant's predecessors, his parents and defendant himself. As previously mentioned, defendant's parents, David and Betty Valerio acquired their Deed in 1963. The activities described by David Valerio in his deposition testimony established that he immediately began

11

mowing and maintaining the property. When David Valerio's usage of the disputed area of the property is tacked onto defendant Scott Valerio's usage of the same disputed area of the property, the Court finds that this easily exceeds the requisite twenty-one year statutory requirement for establishing adverse possession, whether beginning in 1963 or 1969, at the start of the pet cemetery business.

## DISTINCT AND EXCLUSIVE

To constitute distinct and exclusive possession for purposes of establishing title to real property by adverse possession, the claimant's possession need not be absolutely exclusive. Brennan v. Manchester Crossings, Inc., 708 A.2d 815 (Pa. Super. 1998), citing Reed v. Wolyniec, 471 A.2d 80 (Pa. Super. 1983). Rather, it need only be a type of possession which would characterize an owner's use. Id. For example, in Reed, the appellees, Robert and Audrey Reed, asserted title by adverse possession to a lot adjacent to their residence. The Reeds had maintained the lot by cutting the lawn and by planting and maintaining thereon various shrubbery and flowering plants. In affirming the trial court's determination that the Reeds had established title to the lot by adverse possession, Judge Wieand, writing for a unanimous court, opined:

> Thus, the exclusive character of appellees' [the Reeds] possession was not destroyed because the other persons occasionally passed unobserved over the lot. It was enough that appellees' possession was to the general exclusion of others and that they remonstrated with persons who attempted, without permission, to use the land. Reed, at 84.

In this case, defendant has clearly shown that he and his predecessors regularly and continuously undertook activity in the disputed area, including grass cutting and reseeding, that would be typical of someone owning the property, and it was to the general exclusion of others. Therefore, the Court finds that defendant has established this element of adverse possession by clear and convincing evidence.

12

## HOSTILE

The word "hostile" as an element of adverse possession does not mean ill will or actual hostility, but simply implies assertion of ownership rights which are adverse to those of the true owner and all others. Brennan v. Manchester Crossings, Inc., 708 A.2d 815 (Pa. Super. 1998), citing Schlagel v. Lombardi, 486 A.2d 491 (1984). Simply stated, the possession must be "such as to import a denial of the owner's title." Id., 3 Am.Jur.2d §50, at 143-144. If all elements of adverse possession claim, other than hostility, have been established, hostility element is implied. Id., Schlagel, at 495. (See also: Tioga Coal Co. v. Supermarkets General Corp., 546 A.2d 1 (Pa. 1988); Palac v. DiSanto, 622 A.2d 378 (Pa. Super. 1993); Myers v. Beam, 713 A.2d 61 (Pa. 1998)).

Plaintiffs argue that because the defendant mistakenly believed (because of his incorrect Deed) that the subject property was rightfully his, therefore, defendant's alleged ownership cannot be hostile. This Court disagrees. Adverse and hostile means that the possessor intends to take and use the subject property as his or her own to the exclusion of all others. In other words, the possessor behaves in a manner that demonstrates, as to the general public and all others, "this property is mine". This is exactly what defendant did. This Court has determined that it matters not whether the possessor's attitude is, "I am going to use this property as my own and do not care that someone else says it is his property", or if the possessor simply mistakenly believes that it is lawfully his property and therefore treats it as his own.

The facts of this case are not silent as to the element of hostility. The evidence at trial indicated that plaintiffs never gave permission for defendant or his predecessors in title to use the disputed area. (TT, pp. 54, 62). In fact, defendant never received permission from anyone to use the disputed area. (TT, p. 77).

13

The evidence did show that defendant, and his parents, as predecessors in title, were under the false impression, beginning in 1963, that they owned the disputed area. In fact, the disputed area, by all accounts, was used by no one other than defendant, his siblings and his parents before him. The evidence at trial demonstrated, clearly and convincingly, that defendant and his parents, treated the property in the disputed area as if they owned it, i.e., they mowed the area continuously on a regular basis, and seeded the land, to remediate it, based upon the constant grave site burials for pets. In addition, defendant regularly planted shrubs and placed concrete benches on the property. And, of course, defendant operated his commercial business or pet cemetery on said property, and buried pets on his property, even in the disputed area itself. This Court has already indicated how said activities satisfied the open, visible and notorious element of adverse possession. In other words, the actual physical facts of the possession by defendant and his predecessors were present in this case continuously from 1963 to the present time. It is true, however, as indicated previously herein, that in 2003, plaintiff notified defendant of the discrepancy in the boundary line. Per defendant's testimony, this was the first notification of any such discrepancy. (TT. p. 34). Based upon the foregoing, the Court finds that the element of hostility has been established by clear and convincing evidence by defendant in this matter.

In reviewing the evidence in this case, the Court has reviewed the credibility of the parties. As the fact finder, the court is entitled to assess the credibility of the parties. Millili v. Com., Dep't of Transp., 745 A.2d 111, 113 (Pa. Cmwlth. 2000). Overall, the court accepts the testimony of the defendant Scott Valerio, as well as the deposition testimony of David Valerio, in this matter, as being persuasive in reference to their respective ownership of the property and their activities in maintaining the property. The testimony of defendant and defendant's wife and defendant's father was highly detailed as to all of their respective activities on the subject property since 1963. In particular, the Court was persuaded by defendant's testimony in his

14

recollection and memories of living on the property, and maintaining the property as a teenager and thereafter, in his early adult years. The defendant has essentially spent his entire life on this property and clearly helped from a very early age in its maintenance and upkeep. Defendant went on to acquire the property and the family business, making it his life's work. Finally, defendant did not dispute the manner in which he learned of the boundary line dispute; but indicated his sincere and genuine belief as to his true ownership of said disputed area. The court found his testimony to be credible and persuasive. Finally, the Court finds that, while the Plaintiff's testimony was credible, he lacked knowledge of the history of activities on the subject property, and was unable to counter defendant's testimony.

Accordingly, the following Order of Court is hereby entered, as follows:

15

## ORDER

AND NOW, this 28th day of October, 2013, after conducting a non-jury trial in the above matter, and upon careful consideration, and, consistent with the analysis contained in the foregoing decision; it is hereby ORDERED, ADJUDGED and DECREED, as follows:

1) Defendant has established, by clear and convincing evidence, all of the elements of adverse possession, such that Defendant is the rightful owner in fee simple absolute of the entire real property described in the July 1, 1995 Deed from David J. Valerio and Betty Lou Valerio to Defendant, Scott Valerio and recorded at Deed Book Volume 3352, Page 175, in the Office of the Recorder of Deeds in and for Westmoreland County. Further, the same property is described as Parcel A in the Valerio Subdivision dated May 1995, and recorded on June 27, 1995, in the Office of the Recorder of Deeds in and for Westmoreland County, and recorded at Plan Book Volume 90, Page 2274.

2) Judgment shall be entered in favor of Defendant, and against Plaintiffs, as to all Counts in Plaintiffs' Complaint.

BY THE COURT:

Anthony G. Marsili, Judge

ATTEST:

Prothonotary

16

**Pa. R.C.P. 236 Notice**

This Order has been sent by fax/mail/email
on ___10/28/13___ to the following:

Bernard P. Matthews, Jr., Esq.
Donald J. Snyder, Jr., Esq.

_____
Deputy Prothonotary

17