J-A33011-16

2017 PA Super 49

RODGER WEIBLE   ¦   IN THE SUPERIOR COURT OF
PENNSYLVANIA

    Appellee

   v.

WILLIAM P. WELLS AND ELIZABETH
LOUISE WELLS

    Appellants   ¦   No. 46 WDA 2016

Appeal from the Order December 8, 2015
in the Court of Common Pleas of Jefferson County
Civil Division at No(s): 923-2009 CD

BEFORE:   LAZARUS, SOLANO, and STRASSBURGER,* JJ.

DISSENTING OPINION BY STRASSBURGER, J.:**FILED FEBRUARY 27, 2017**

  "Adverse possession is an extraordinary doctrine which permits one to achieve ownership of another's property by operation of law." ***Pennsylvania Servs. Corp. v. Texas E. Transmission, LP***, 98 A.3d 624, 634 (Pa. Super. 2014) (quoting ***Flannery v. Stump***, 786 A.2d 255, 258 (Pa. Super. 2001)). "It is a serious matter indeed to take away another's property. That is why the law imposes such strict requirements of proof on one who claims title by adverse possession." ***Edmondson v. Dolinich***, 453 A.2d 611, 614 (Pa. Super. 1982).

  There is no Pennsylvania authority directly on point. However, I believe this Court's decision in ***Showalter v. Pantaleo***, 9 A.3d 233 (Pa. Super. 2010), is instructive. In that case, a vacant lot was owned by LTV Steel. LTV filed for bankruptcy in 1986, and the lot remained in the

_____

*Retired Senior Judge assigned to the Superior Court.

bankruptcy estate until it was sold to ALA in 1993. Shortly thereafter, ALA sold it to another company which then sold it to Pantaleo in 2008. *Id.* at 234.

In the meantime, in 1979, the Showalters had purchased a home adjacent to the lot. The Showalters immediately cleared the lot, and then continuously for almost 30 years thereafter treated the property as their own, planting and removing trees, removing part of a fence, placing a swing set and pool, and allowing their children and pets to play in the lot. They sued Pantaleo in 2008, claiming that they had acquired ownership of the lot by adverse possession. *Id.*

The trial court ruled in favor of Pantaleo, finding that the Showalters filed to establish 21 years of continuous possession because the inclusion of the property in LTV's bankruptcy estate interrupted the Showalters' "continuity of possession." *Id.* at 235. This Court agreed, holding that for the period between 1986 and 1993 when LTV was in bankruptcy, the lot was held *in custodia legis* (in the custody of the law). *Id.* at 236.

> As such, [the Showalters'] possession of the subject property was interrupted. [The Showalters] cannot establish that they have met the requirements for adverse possession for a continuous period of 21 years, because the subject property was part of the estate in bankruptcy for seven of those years. Therefore, the trial court committed no error of law or abuse of discretion in entering judgment in favor of [Pantaleo].[4]
>
> _____
> [4] [The Showalters] argue that, pursuant to 42 Pa.C.S.A. § 5535(b) (concerning stays in civil proceedings), LTV's filing for bankruptcy tolled their claim for adverse

> possession.  At the time that LTV filed for bankruptcy, [the Showalters] had no claim that could be tolled.  The earliest time at which [the Showalters] arguably had a claim for adverse possession was July 31, 2000, 21 years after [they] purchased the property adjacent to the subject [lot].

*Id.* at 237.

Thus, the Showalters actually used the lot in question continuously for 30 years for all the world to see; however, for purposes of the legal requirements of adverse possession, the bankruptcy was an interruption that thwarted the legal requirement of 21 years of continuous use.  Nor were the Showalters permitted to tack the 7 years of possession before LTV's bankruptcy to the 15 years afterwards to achieve the necessary 21 years.

I see no reason why, for purposes of determining the continuity of hostile possession, the Commonwealth's ownership of property for a public use should be treated any differently than the law's custody of property in a bankruptcy estate.  The Wellses' claim should fail for the same reason the Showalters' claim failed.

Considering the extraordinary nature of the privilege of acquiring ownership of another's land through adverse possession in light of the guidance offered by *Showalter*, I cannot join the Majority's holding.  Rather, I would adopt the approach of those jurisdictions that have held that the statutory period for adverse possession begins to run anew after the land is owned by the state.  *See*, *e.g.*, *Armstrong v. Morrill*, 81 U.S. 120

(1871) (holding ownership by state "destroys the efficacy of all prior possession, so that to gain a title under the statute, *a new adverse possession* for the time limited must be taken" (emphasis in original)); **Home Land Co. v. Bryant**, 6 La. App. 130, 132 (1927) (same). **See also Greene v. Esquibel**, 272 P.2d 330, 333 (N.M. 1954) (holding that adverse possession for necessary ten-year period was not established, where "ten years had not elapsed since the state parted with title"); **Winstead v. Winstead**, 38 So. 2d 118, 119 (Miss. 1948) (holding ownership by State constituted a "breach of the continuity of adverse possession" such that only possession following state's ownership was available to possessor "to build up his prescriptive title"); **Fordham Operating Corp. v. Westchester Cty.**, 370 N.Y.S.2d 977, 984 (N.Y. Sup. Ct. 1975), *aff'd sub nom.*, **Fordham Operating Corp. v. Cty. of Westchester**, 382 N.Y.S.2d 292 (N.Y. App. Div. 1976) ("[A] new adverse possession for the period of the statute of limitations must be commenced and continued for the statutory period after the City surrendered title.").

Therefore, I respectfully dissent.